**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

ROBERT PEAY, as guardian of minor
child Jennifer McCluskey; TEEN HELP,
doing business as Brightway Adolescent
Hospital; DELBERT E. GOATES, M.D.,

     Plaintiffs - Appellants,

     v.

BELLSOUTH MEDICAL ASSISTANCE
PLAN; BLUE CROSS BLUE SHIELD OF
ALABAMA,

     Defendants - Appellees.

--------------------------------

UNITED STATES DEPARTMENT OF
LABOR,

     Amicus Curiae.

No. 98-4180

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
### (D. Ct. No. 97-CV-916-K)

---

Brian S. King and Marcie E. Schaap, King & Isaacson, P.C., Salt Lake City, Utah,
appearing for Plaintiffs-Appellants.

Keith W. Kochler, BellSouth Telecommunications, Inc., Atlanta, Georgia (Gary
L. Johnson, Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, with him on
the brief), appearing for Defendants-Appellees.

Henry L. Solano, Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, and Edward D. Sieger, Senior Appellate Attorney, United States Department of Labor, filed an amicus curiae brief in support of Appellants.

---

Before **TACHA** , **BRORBY** , and **EBEL** , Circuit Judges.

---

**TACHA** , Circuit Judge.

---

Plaintiffs appeal the district court's order granting defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer for improper venue.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

**I.**

At the time of the events in this case, plaintiff Jennifer McCluskey lived in Tennessee with her guardian, plaintiff Robert Peay.  Peay's employer, BellSouth Telecommunications, Inc. (BST), provided both Peay and McCluskey with insurance through defendant BellSouth Medical Assistance Plan ("Plan").  BST is headquartered in Atlanta, Georgia, and operates in nine southeastern states.  Defendant Blue Cross & Blue Shield of Alabama (BCBS), located in Birmingham, Alabama, provided third-party administration services to the Plan.

In 1993, McCluskey received in-patient psychiatric care at plaintiff Brightway Adolescent Hospital ("Brightway"), a Utah facility.  Plaintiff Delbert

-2-

Goates, a Utah resident, was McCluskey's treating physician. The Plan's utilization review agent precertified McCluskey's treatment, and the Plan and BCBS paid Goates for a portion of McCluskey's care. However, the Plan refused to pay 100% of the covered charges because McCluskey did not use a preferred provider's services. McCluskey and Peay executed an assignment of benefits in favor of Brightway and Goates.

McCluskey, Peay, Brightway, and Goates then sued the Plan and BCBS in Utah federal district court for a determination of medical benefits due under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs served a summons and the complaint on BCBS in Birmingham, and the Plan waived service of process.

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), defendants moved to dismiss for lack of jurisdiction or, in the alternative, to transfer for improper venue. The district court granted defendants' motion to dismiss, and plaintiffs appealed.

## II.

### A.

We review de novo the district court's legal determination that it lacks personal jurisdiction over defendants. Application to Enforce Admin. Subpoenas Duces Tecem of the SEC v. Knowles, 87 F.3d 413, 415 (10th Cir. 1996). The

district court found that neither the Plan nor BCBS has an address, an office, a statutory agent, a telephone listing, employees, active Plan participants, or other operations in Utah. McCluskey v. BellSouth Med. Assistance Plan, 23 F. Supp.2d 1312, 1315 (D. Utah 1998). Applying a "traditional personal jurisdiction test," the lower court held that defendants lacked "sufficient contacts" with Utah to support the exercise of personal jurisdiction and thus dismissed the suit. Id.

On appeal, plaintiffs argue that ERISA, 29 U.S.C. § 1132(e)(2), authorizes nationwide service of process and consequently nationwide personal jurisdiction. They assert that when a court's jurisdiction is invoked based on ERISA's nationwide service of process provision, minimum contacts with the forum are unnecessary. Under these circumstances, plaintiffs insist, a federal district court can exercise jurisdiction over defendants as long as defendants have minimum contacts with the United States. Plaintiffs claim that defendants have the requisite minimum contacts because defendants are large corporations carrying on day-to-day business throughout this country.[1]

Defendants contend that even if § 1132(e)(2) authorizes nationwide service of process, it does not authorize nationwide jurisdiction. They argue that under

_____

[1]Plaintiffs also argue that venue is proper in Utah. Because the district court dismissed plaintiffs' case on the ground that it lacked jurisdiction over defendants, the lower court did not reach venue. Therefore, we do not decide whether Utah is an appropriate venue for this suit.

-4-

the plain language of § 1132(e)(2), personal jurisdiction in ERISA cases is co-extensive with venue and plaintiffs cannot establish either of these procedural requirements.

**B.**

Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) "whether the applicable statute potentially confers jurisdiction" by authorizing service of process on the defendant and (2) "whether the exercise of jurisdiction comports with due process." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997); see also Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) (finding, in a federal question case, that before a federal court may exercise personal jurisdiction over a defendant, there must be "a basis for the defendant's amenability to service of summons").

While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries. Willingway Hosp., Inc. v. Blue Cross & Blue Shield, 870 F. Supp. 1102, 1104 (S.D. Ga. 1994) (citing 4 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1063 (1987)). In the federal system, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. By contrast, "'[t]he requirement that a court have personal jurisdiction flows . . .

from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.'" Omni Capital Int'l, 484 U.S. at 104 (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). More specifically, in federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment. [2] See id. at 103-04 (assuming, in a federal question case, that a court's exercise of personal jurisdiction must comport with Fifth Amendment due process principles); Republic of Panama, 119 F.3d at 942 ("It is well established that when . . . a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment.").

## C.

To determine whether the applicable statute potentially confers jurisdiction over defendants by authorizing service of process, we begin with Fed. R. Civ. P. 4(h)(1). Rule 4(h)(1) governs service upon domestic corporations. In pertinent part, Rule 4(h)(1) provides that, unless a defendant waives service, service must be made "in a judicial district of the United States in the manner prescribed for individuals by" Rule 4(e)(1). Rule 4(e)(1) states, "Unless otherwise provided by

---

[2] "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

federal law, service upon an individual . . . may be effected in any judicial district of the United States pursuant to the law of the state in which the district court is located . . . ."

In ERISA cases, federal law provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, <u>and process may be served in any other district where a defendant resides or may be found</u>.

29 U.S.C. § 1132(e)(2) (emphasis added). There is no question that the last clause of § 1132(e)(2) authorizes nationwide service of process. "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." <u>Republic of Panama</u>, 119 F.3d at 942; <u>see also</u> Fed. R. Civ. P. 4(k)(1)(D) ("Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant when authorized by a statute of the United States."). Thus, provided that due process is satisfied, § 1132(e)(2) confers jurisdiction over defendants by authorizing service of process on them.[3]

---

[3]Section 1132(e)(2) states that process may be served in the district where the defendant resides. Because BCBS is a corporation, we must determine where it resides. The statute does not define resides; however, the first part of § 1132(e)(2) which discusses venue also uses the word resides. When Congress uses the same word twice in the same sentence, we presume that it intended the word to carry the same definition. In determining the definition of resides in the

-7-

**D.**

Next, we must determine whether the Utah district court's exercise of jurisdiction over defendants comports with due process. Plaintiffs argue that because ERISA authorizes nationwide service of process, the district court can constitutionally exercise jurisdiction over defendants as long as they have minimum contacts with the United States as a whole. Under this approach, the so-called "national contacts" test, a plaintiff could sue a defendant in any federal court in the United States, regardless of the defendant's contacts with the forum or the burden on the defendant of litigating in that forum. We are convinced that due process requires something more. [4]

venue context, we supplement the specific venue statute in § 1132(e)(2) with the more general venue provision applicable in all civil cases found in 28 U.S.C. § 1391(c). See Monument Builders, Inc. v. American Cemetery Ass'n, 891 F.2d 1473, 1477 (10th Cir. 1989). The general provision states that "[f]or purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, under § 1132(e)(2), a corporation resides wherever personal jurisdiction is proper. Although this reading seems to negate the rest of the venue provisions for corporations, it still has meaning when a plaintiff sues an individual or a partnership.

Thus, in this case, because plaintiffs served a summons and complaint on BCBS in Birmingham, where it has its offices, and the Plan waived service of process, service was proper.

[4]On two occasions, the Supreme Court has declined to decide whether the national contacts approach is constitutional under the Fifth Amendment. Omni Capital Int'l, 484 U.S. at 103 n.5; Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 n.* (1987). Some jurisdictions have adopted the national contacts test. Federal Fountain, Inc. v. KR Entertainment, Inc. (In re Federal Fountain, Inc.), 165 F.3d 600, 601-02 (8th Cir. 1999) (en banc) (bankruptcy);

As we noted above, the personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment and restricts judicial power in order to protect the individual's liberty interest. Bauxites, 456 U.S. at 702. Thus, the "proper focus for a personal jurisdiction test should be on protecting an individual's liberty interest in avoiding the burdens of litigating" in an unfair or unreasonable forum. Busch v. Buchman, Buchman & O'Brien, 11 F.3d 1255, 1259 (5th Cir. 1994) (Garza, J., dissenting). "Requiring that the individual defendant in a national service of process case only reside somewhere in the

_____

Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 825-26 (5th Cir. 1996) (following precedent "dutifully" and applying the national contacts test in an ERISA case, but criticizing this approach because it separates personal jurisdiction from due process); see also Robert C. Casad, Personal Jurisdiction in Federal Question Cases, 70 Tex. L. Rev. 1589, 1606 (1992) (advocating the national contacts approach).

Plaintiffs contend that we adopted the national contacts test in Application to Enforce Admin. Subpoenas Duces Tecem of the SEC v. Knowles, 87 F.3d 413 (10th Cir. 1996). In Knowles, the SEC filed an application for an order to show cause and for an order compelling the defendant to comply with administrative subpoenas duces tecum. Id. at 415. The district court issued an order to show cause, and the SEC served the defendant with the order in Nassau, Bahamas. Id. The defendant filed a motion to dismiss, arguing that the district court did not have jurisdiction over him. Id. We recognized that 15 U.S.C. § 77v(a) provides for "worldwide service of process in cases of the enforcement of subpoenas issued by the SEC" and upheld the district court's order to the defendant to comply with the subpoenas. Id. at 417, 419. In so doing, we limited our decision "to the question of the jurisdiction of the district court, based upon the extraterritorial service of the Order to Show Cause, to enforce the SEC's subpoenas duces tecum against [the defendant]." Id. at 416. Thus, Knowles merely stands for the narrow proposition that under the facts and circumstances presented in that case, § 77v(a) authorized the district court to exercise and enforce its subpoena power worldwide.

United States does not protect this interest." Id. (Garza, J., dissenting); see also Willingway Hosp., Inc. , 870 F. Supp. at 1106 ("To allow Congress to dictate personal jurisdiction through the enactment of nationwide service of process provisions, unquestioned by the judiciary[,] is nonsensical.").

The Supreme Court has not yet defined Fifth Amendment due process limits on personal jurisdiction. However, the Court has held that due process under the Fourteenth Amendment requires that "maintenance of [a] suit . . . not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington , 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Due process limits on a court's ability to exercise jurisdiction "are designed to protect [defendants] by providing them with fair notice that their activities will render them liable to suit in a particular forum." Republic of Panama , 119 F.3d at 945 (citing Burger King Corp. v. Rudzewicz , 471 U.S. 462, 470-77 (1985)). A defendant is deemed to have "fair warning" if it has "purposefully directed [its] activities at residents of the forum." Burger King Corp. , 471 U.S. at 472 (internal quotation marks and citation omitted). However, even if a defendant has "minimum contacts" with the forum, due process is not satisfied unless "the assertion of personal jurisdiction would comport with fair play and substantial justice." Id. at 476 (internal quotation marks and citation omitted).

Like the Eleventh Circuit, we discern no reason why the Fourteenth Amendment's fairness and reasonableness requirements "should be discarded completely when jurisdiction is asserted under a federal statute." Republic of Panama, 119 F.3d at 945. The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, [5] and both "were designed to protect individual liberties from the same types of government infringement." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 331-32 (1976)). Accordingly, we hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment "protects individual litigants against the burdens of litigation in an unduly inconvenient forum." Id.

To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate "that his liberty interests actually have been infringed." Id. at 946. The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will "make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in

---

[5]Compare U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."), with U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .").

-11-

comparison to his opponent." Burger King Corp., 471 U.S. at 478 (internal quotation marks and citations omitted); accord Republic of Panama, 119 F.3d at 948 (following Burger King Corp.).

However, as Judge Becker has pointed out, given the "practical considerations emanating from the realities of contemporary litigation, . . . any constitutional due process limitations upon a federal extraterritorial (nationwide) service of process statute must be broadly defined." Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp. 191, 201 (E.D. Pa. 1974). Thus, in evaluating whether the defendant has met his burden "of establishing constitutionally significant inconvenience," Republic of Panama, 119 F.3d at 946, courts should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of

residence or business.     Oxford First Corp.   , 372 F. Supp. at 203.

"We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."        Republic of Panama   , 119 F.3d at 947.  Certainly, "[i]n this age of instant communication,"        Oxford First Corp.   , 372 F. Supp. at 201, and modern transportation, the burdens of litigating in a distant forum have lessened,   Republic of Panama   , 119 F.3d at 947-48.   [6]

If a defendant successfully demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient, then "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."        Republic of Panama   , 119 F.3d at 948.  To determine whether infringement on the defendant's liberty is justified sufficiently by government interests,

> courts should examine the federal policies advanced by
> the statute, the relationship between nationwide service
> of process and the advancement of these policies, the
> connection between the exercise of jurisdiction in the
> chosen forum and the plaintiff's vindication of his federal
> right, and concerns of judicial efficiency and economy.
> Where . . . Congress has provided for nationwide service
> of process, courts should presume that nationwide personal

---

[6]"We note that inconvenience 'most frequently can be accommodated through a change of venue.'  Alternative methods of addressing inconvenience do not, however, do away with the need for a constitutional floor to protect litigants against truly undue burdens.  '[I]nconvenience may at some point become so substantial as to achieve constitutional magnitude.'"        Republic of Panama   , 119 F.3d at 947 n.25 (quoting     Burger King Corp.   , 471 U.S. at 484).

-13-

jurisdiction is necessary to further congressional objectives.
Id.

**III.**

We conclude that under the broad standard set forth above, defendants cannot show that their liberty interests actually have been infringed. First, defendants have sufficient contacts with Utah: they precertified plaintiff McCluskey's treatment at a Utah hospital and paid plaintiff Goates, a Utah resident, for a portion of McCluskey's care. Because defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah.

Second, even though defendants may be inconvenienced by defending this action in Utah, they cannot show that this burden rises to the level of constitutional concern. Defendants are large corporations operating throughout the southeastern United States. They surely have the resources to access counsel in Utah. And, while Utah may be some distance from the southeast, modern methods of communication and transportation greatly reduce the significance of this physical burden.

Third, nothing in the record indicates that considerations of judicial economy or the probable location of discovery in this case make Utah an unfair forum. Finally, because defendants operate and administer a multi-state insurance

-14-

plan regulated by federal law, their activities unquestionably have a significant impact beyond the borders of Alabama and Georgia. Indeed, as this case demonstrates, defendants' activities reach far beyond the southeastern United States.

Thus, defendants have not met their burden of demonstrating that the district court's assertion of jurisdiction will make litigation so difficult and inconvenient that they unfairly will be at a severe disadvantage compared to plaintiffs. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (11th Cir. 1997) (finding, in a RICO case, that jurisdiction was consistent with the Fifth Amendment because there was no evidence in the record of "extreme inconvenience or unfairness" to the defendants), cert. denied, 523 U.S. 1048 (1998); Republic of Panama, 119 F.3d at 948 (same); Oxford First Corp., 372 F. Supp. at 203-05 (applying the "fairness test" set forth above in a securities case and finding that it was not unfair to subject defendants to the court's jurisdiction). Because defendants have not shown that the district court's assertion of jurisdiction will infringe upon their liberty interests, we need not balance the federal interests at stake in this suit. We hold that the district court erred in granting defendants' motion to dismiss for lack of personal jurisdiction.

REVERSED AND REMANDED.