**BRIGHTWAY ADOLESCENT HOSPITAL, Julie J. Goates, Personal Representative of the Estate of Dr. Delbert T. Goates, and Betsy Crackel, by and through her guardian, Elizabeth Crackel, Plaintiffs,**

**v.**

**HAWAII MANAGEMENT ALLIANCE ASSOCIATION and the Hawaii Management Alliance Association Option Plus Benefit Plan, Defendants.**

No. 2:00–CV–00756–S.

United States District Court,
D. Utah,
Central Division.

April 25, 2001.

Brian S. King, Marcie E. Schaap, King & Isaacson, Salt Lake City, UT, for Plaintiff.

Timothy C. Houpt, Brett M. Hanna, Jones Waldo Holbrook & McDonough, Salt Lake City, UT, for Defendants.

### MEMORANDUM DECISION AND ORDER

SAM, Senior District Judge.

### I. INTRODUCTION

Pursuant to Fed.R.Civ.P. 12(b)(2) and (3), defendants Hawaii Management Alliance Association and The Hawaii Management Alliance Association Option Plus Benefit Plan (hereinafter "HMAA") move the court to dismiss plaintiffs' complaint for lack of personal jurisdiction over HMAA and/or for improper venue. In the alternative, HMAA requests that venue be transferred to the United States District Court for the District of Hawaii pursuant to 28 U.S.C. § 1404(a).[1]

Plaintiffs have filed suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., for unpaid claimed benefits, damages for HMAA's alleged failure to comply with certain ERISA provisions, and for specific declaratory and injunctive relief. Plaintiff Betsy Crackel ("Betsy"), who at the time of admission was thirteen years old, received inpatient acute care psychiatric treatment in St. George, Utah from plaintiffs Brightway Adolescent Hospital ("Brightway") and Delbert T. Goates, M.D., from September 22, 1997 through October 2, 1997. Betsy was insured by HMAA through her mother's employment in Hawaii. Betsy's mother and father signed a consent for treatment and assignment of benefits to Brightway and Dr. Goates. Following her discharge from Brightway on October 2, 1997, Betsy was transferred to Cross Creek Manor, a residential treatment center in LaVerkin, Utah, where she was treated through August 15, 1999.

### II. DISCUSSION

#### A. Personal Jurisdiction

HMAA asks that the case be dismissed for lack of personal jurisdiction over it pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiffs' claim, that HMAA is subject to personal jurisdiction in this ERISA case, rests on 29 U.S.C. § 1332(e)(2), which authorizes nationwide service of process.

 "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir.2000) (quoting *Republic of Panama v. BCCI Holdings*

---

1. The court, having reviewed the briefing submitted by the parties, will rule on the motions without the assistance of oral argument, pursuant to DUCivR 7–1(f).

*(Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997)). It is unquestioned that nationwide service of process is authorized by 29 U.S.C. § 1132(e)(2). With respect to the requirement of comporting with due process, the Tenth Circuit provides the following instruction.

[W]e hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment "protects individual litigants against the burdens of litigation in an unduly inconvenient forum." *Id.* To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate "that his liberty interests actually have been infringed." *Id.* at 946. The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will "make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent." *Burger King Corp.,* 471 U.S. at 478, 105 S.Ct. 2174 (internal quotation marks and citations omitted); *accord Republic of Panama,* 119 F.3d at 948 (following *Burger King Corp.*).

However, ... given the "practical considerations emanating from the realities of contemporary litigation, ... any constitutional due process limitations upon a federal, extraterritorial (nationwide) service of process statute must be broadly defined." *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 201 (E.D.Pa.1974). Thus, in evaluating whether the defendant has met his burden "of establishing constitutionally significant inconvenience," *Republic of Panama,* 119 F.3d at 946, courts should consider the following factors: (1) the extent of the defendant's contacts with the place where the action was filed; (2)

the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business. *Oxford First Corp.,* 372 F.Supp. at 203.

"We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Republic of Panama,* 119 F.3d at 947. Certainly, "[i]n this age of instant communication," *Oxford First Corp.,* 372 F.Supp. at 201, and modern transportation, the burdens of litigating in a distant forum have lessened, *Republic of Panama,* 119 F.3d at 947–48. If a defendant successfully demonstrates that litigation in the plaintiff's chosen forum is unduly inconvenient then "jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Republic of Panama,* 119 F.3d at 948. To determine whether infringement on the defendant's liberty is justified sufficiently by government interests,

courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the

**1224**

exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where ... Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.

*Id.*

*Peay,* 205 F.3d at 1212–1213 (footnote omitted).

■ Applying the foregoing broad standard to this case, the court concludes that HMAA has failed to show that its liberty interest has been infringed. First, the court concludes that HMAA has sufficient contacts with Utah. HMAA has paid benefit claims for insureds who have sought treatment in Utah including a percentage of the charges of Brightway and Dr. Goates. *See, e.g., Peay,* 205 F.3d at 1213 "([b]ecause defendants rendered benefits in Utah, they knew or should have known that a dispute over benefits could arise in Utah"). Second, inconvenience, if any, to HMAA of defending this case in Utah does not rise to the level of constitutional concern. It is undisputed that HMAA receives annual premiums in the millions of dollars. HMAA maintains relationships with mainland providers so that its members may receive care outside of Hawaii. Although the distance between Utah and Hawaii is significant, HMAA has not persuaded the court that defending this action in Utah rises to a level of constitutional concern given modern modes of transportation and communication. The same can be said of defendants' ability to access counsel. *See, e.g., Peay,* 205 F.3d at 1213 (finding no inconvenience or constitutional concern where "[d]efendants are large corporations operating throughout the southeastern United States ... have the resources to access counsel in Utah ... [and even though] Utah may be some distance

from the southeast, modern methods of communication and transportation greatly reduce the significance of this physical burden"). Next, both HMAA and plaintiffs acknowledge that considerations of judicial economy are neutral and, thus, do not suggest that Utah is an unfair forum. With regard to discovery, the court agrees with plaintiffs that, because the court will sit in review of an administrative appeal proceeding, this case lends itself to summary disposition based on affidavits and/or deposition evidence. Although it appears that discovery will be taken in both Utah and Hawaii, it is unlikely that witnesses will have to travel from their state of residence. The burden of travel, which the court does not view as constitutionally burdensome given modes of modern transportation, is on counsel and appears unavoidable regardless of where personal jurisdiction lies. Finally, HMAA's regulated activities reach beyond the borders of Hawaii. The regulated activity in question is insurance subject to provisions of ERISA. Although operating in Hawaii, HMAA maintains relationships with mainland providers so that its members may receive medical care outside of Hawaii. Betsy received medical care from Utah providers who have accepted an assignment of whatever benefits are due from HMAA. Thus, HMAA's insurance activities have had an impact outside of Hawaii. *See, e.g., Peay,* 205 F.3d at 1213 ("because defendants operate and administer a multistate insurance plan regulated by federal law, their activities unquestionably have a significant impact beyond the borders of Alabama and Georgia").

For the foregoing reasons, the court concludes that HMAA has not met its burden of showing that this court's "assertion of jurisdiction will make litigation so difficult and inconvenient that [it] unfairly will be at a severe disadvantage compared to plaintiffs." *Peay,* 205 F.3d at 1213.

HMAA having failed to show that the assertion of jurisdiction by this court will infringe upon its liberty interest, the court need not balance the federal interests at stake. *Peay,* 205 F.3d at 1214.

**B.** *Venue*

Pursuant to Fed.R.Civ.P. 12(b)(3), HMAA also moves the court to dismiss this action for improper venue. An ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found ....". 29 U.S.C. § 1132(e)(2).

■ HMAA's challenge to the court's personal jurisdiction having failed, the court concludes that venue is proper in this district because HMAA either "resides or may be found" here. *See Peay,* 205 F.3d at 1210 n. 3 ("under § 1132(e)(2), a corporation resides wherever personal jurisdiction is proper"); *McCracken v. Automobile Club of Southern California, Inc.,* 891 F.Supp. 559, 562 (D.Kan.1995) ("court borrows the definition of corporate residence from [28 U.S.C.] Section 1391(c) in determining venue under § 29 U.S.C. § 1132(e)(2)" thus venue was proper where defendants were subject to personal jurisdiction in district). HMAA's position, that defendant Hawaii Management Alliance Association Option Plus Benefit Plan is not a corporation and, therefore, cannot be said to reside in Utah, ignores that it may be found in Utah because personal jurisdiction may be properly asserted over it. *See Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.,* 607 F.2d 245, 248 (9th Cir.1979) (if personal jurisdiction is properly asserted over the unincorporated pension fund defendant in a district, the defendant is "found" there within ERISA venue provision).

**C.** *28 U.S.C. § 1404(a) Transfer*

■ In the alternative, HMAA requests that this case be transferred to the United States District Court for the District of Hawaii pursuant 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In evaluating a motion to transfer, the court considers the following.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen,* 376 U.S. at 622, 84 S.Ct. at 812).

Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir.1967).

*Chrysler Credit Corp. v. Country Chrysler Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991). As master of the complaint, deference is given to plaintiff's forum selection. *Fron-*

*tier Federal Sav. & Loan Ass'n v. National Hotel Corp.,* 675 F.Supp. 1293, 1301 (D.Utah 1987). "The defendants' burden is heavy, and unless the circumstances of the case weigh heavily in favor of the transfer, the plaintiff's choice should not be disturbed." *Id.*

■ HMAA acknowledges that some records and witnesses are located in Utah, but asserts that most of the witnesses as well as records pertaining to denial of benefits are in Hawaii, and, if this matter proceeds to trial in Utah, none of the critical witnesses can be compelled to appear. However, other than Loraine Bosanko, HMAA fails to identify its witnesses by name or to elaborate on their expected testimony, or to explain why the records cannot be produced in Utah. *See Segil v. Gloria Marshall Management Co., Inc.,* 568 F.Supp. 915, 919 (D.Utah 1983) (when relying on convenience of witnesses or location of records, movant must name witnesses and location of records, discuss relevance and importance, and explain reasons for hardship or difficulty).

Plaintiffs counter that any inconvenience to HMAA, which is a substantial commercial entity, is outweighed by the inconvenience to plaintiffs. Plaintiffs represent that Brightway is no longer in operation and with only a skeleton staff remaining to collect accounts receivable, it does not have the resources to pursue this case in Hawaii. Similarly, Dr. Goates has passed away and it is represented that his widow is "not in a position to expend large sums to pursue this case in Hawaii." (Mem. Opp. p. 12). While the court takes notice that Betsy and Elizabeth Crackel are residents of Hawaii, the court further notes that Betsy's father and mother previously executed an assignment of benefits to Brightway and Dr. Goates and that Utah is the forum of choice of plaintiffs.

After carefully considering the written memoranda of the parties and applicable law, the court concludes that HMAA has failed in its burden of establishing that the circumstances of this case weigh in favor of transfer. Given the present posture of the case and the likely prospect that this matter may be disposed of summarily, the court's view is that the relevant factors to be considered dictate that this case be retained in the District of Utah.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that defendants' motion to dismiss and alternative motion for change of venue are DENIED.