**LONE STAR STEAKHOUSE & SALOON, INC., Plaintiff,**

v.

**Guy W. ADAMS and John Does 1–10, Defendants.**

**No. 01–1112–JTM.**

United States District Court, D. Kansas.

June 15, 2001.

---

Robert Martin, Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Kenneth J. Rubinstein, Thomas J. Fleming, Olshan Grundman Frome Rosenzweig & Wolosky LLP, New York City, Paul B. Swartz, Andover, KS, for plaintiff.

Tim J. Moore, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, John B. Quinn, Christopher Tayback, Michelle R. Fang, Quinn Emanuel Urquhart, Los Angeles, CA, for defendant.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

This matter comes before the court on defendants' motion to dismiss for lack of jurisdiction or, in the alternative, to transfer for improper or inconvenient venue, and defendants' motion to stay discovery pending resolution of this motion. The motions are fully briefed and the court held a hearing on these motions on June 15, 2001. For the reasons set forth below, the court denies both motions.

### I. Factual Background

Plaintiff is a Delaware Corporation with 283 restaurants across the nation. Its principal executive offices are located in Wichita, Kansas. Plaintiff has more than 8,000 beneficial owners of its common stock[1], which trades on the NASDAQ National Market System. The corporation is governed by a Board of Directors ("Board") that meets on a regular basis in Wichita, Kansas. Defendant Adams ("defendant"), a California resident, owns approximately 1,100 shares of plaintiff's common stock, which he purchased for approximately $10,000.

In February 2001, defendant initiated a proxy contest seeking election to the plaintiff's Board. To gain a seat, defendant must receive the vote of a majority of shareholders who attend plaintiff's annual shareholder meeting, which is scheduled for July 6, 2001. Defendant's preparation for the contest was initiated in late February 2001, when he mailed to plaintiff's executive offices a stockholder's notice of intent to nominate himself for election to the Board. Defendant then filed the following with the SEC: a Preliminary Proxy Statement on February 23, 2001; a Definitive Proxy Statement on March 16, 2001; an Amended Definitive Proxy Statement

---

1. Of the 8,000 shareholders, 338 reside in Kansas.

on April 9, 2001; another Amended Definitive Proxy Statement on May 4, 2001. The Securities Exchange Act of 1934 requires all of these filings which are readily available to the public upon filing. By letters to plaintiff's executive offices dated April 6 and 13, 2001, defendant asked plaintiff to advise him as to the company's view on the accuracy of his proposed proxy material. Finally, by letter dated May 23, 2001, defendant requested that plaintiff either provide him with a list of its shareholders or mail the proposed proxy material to those shareholders.

On April 20, 2001, plaintiff filed the instant action, seeking an injunction to prohibit alleged violations of the Securities Exchange Act. The complaint alleges that defendant's proxy statement contains materially misleading information in that it fails to disclose that persons other than defendant will bear the cost of the solicitation and proxy contest. Defendant asserts that the materials are accurate because he is, in fact, the sole participant in his proxy campaign. Plaintiff also alleges that defendant's proxy materials materially misstate the attributes of several of the current directors' "golden parachute" arrangements. Finally, plaintiff claims that the proxy materials overstate the shareholder support that defendant has received.

Defendant now asserts that the court should dismiss this action because it lacks jurisdiction over him. Alternatively, defendant argues that the court should transfer this matter to the Central District of California in the interest of justice and convenience pursuant to 28 U.S.C. § 1406(a). Plaintiff opposes both of these alternatives and likewise opposes defendant's request to stay discovery pending the outcome of the present motion.

## II. Motion to Dismiss for Lack of Jurisdiction

■ The Securities Exchange Act contains its own jurisdictional provision, which in pertinent part reads as follows:

Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. It is uncontested that § 78aa authorizes "nationwide service of process." Until recently, courts confronting national service statutes had held that minimum contacts with the United States are sufficient to justify the assertion of personal jurisdiction. *See e.g., Monarch Normandy v. Normandy Square,* 817 F.Supp. 899, 902 (D.Kan.1993). However, the Tenth Circuit recently decided, in *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir.2000), that "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Id.* at 1212. The circuit emphasized, however, that because technology has lessened the burdens of litigating in a distant forum it is "only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* at 1212–13 (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 947 (11th Cir.1997)).

The circuit further explains that to establish an assertion of jurisdiction does not comport with Fifth Amendment due process principles, a defendant must demonstrate "that his liberty interests actually have been infringed." *Id.* It is defendant's burden to establish that the court's exercise of jurisdiction will "make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In determining whether defendant has met this burden, the court considers the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

*Id.* at 1212 (quoting *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191, 203 (E.D.Pa.1974)).

### 1. Extent of Defendant's Contacts with Kansas

Defendant points out that his actual contacts with Kansas are limited to the mailing of four letters to plaintiff's Board of Directors. The letters, as outlined above, relate to the proxy contest and solicitation at issue in this case. In *Continental Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982), the Tenth Circuit recognized that "modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications" and that "defending a suit in a foreign jurisdiction is not as burdensome as in the past." *Id.* "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415 (10th Cir.1988) (citing *Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.")). "However, the exercise of jurisdiction depends on the nature of those contacts. The existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards." *Id.* The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Purposeful availment generally "requires affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo,* 839 F.2d at 1420.

Defendant's contacts with Kansas were not "random, fortuitous, or attenuated," as in the case of a product that eventually makes its way to the forum state. Defendant purposefully directed his activities at this state, and therefore he should reasonably have anticipated being haled into court here. Specifically, defendant sent four letters into the forum in order to promote or facilitate the transaction of business toward the end of obtaining a seat on a Kansas-based Board of Di-

rectors. While it is true that the letters did not directly give rise to the instant cause of action, they did promote defendant's proxy activities which he purposefully directs toward a forum-based corporation. Defendant's purposeful contacts with Kansas weigh in favor of finding that Kansas is a fair and reasonable forum in which to litigate this claim.

### 2. Inconvenience to Defendant of Litigating in Kansas

Clearly, litigating this case in Kansas will be inconvenient for defendant just as litigating this case in California would be inconvenient for plaintiff. However, defendant has engaged in a nationwide proxy contest in which he intends to provide proxy materials to shareholders throughout the country. Additionally, defendant's actions seek the end of obtaining a seat on the plaintiff's Board which meets in Wichita, Kansas. If defendant is willing to travel to Wichita for the July 6 shareholders meeting and is presumptively willing to regularly travel to Wichita for Board meetings, then a few brief trips to Wichita to litigate this case should not be overwhelmingly inconvenient. The court also notes that defendant has already obtained Kansas counsel to support and assist his California counsel. In short, the court finds that this factor also weighs in favor of finding that Kansas is a fair and reasonable forum.

### 3. Judicial Economy

Generally, a factor such as judicial economy is neutral in the jurisdictional consideration. This case, however, presents a unique circumstance. The expedited nature with which the case has proceeded to this point is a factor that weighs in favor of this court exercising jurisdiction. Much discovery has already been completed and the court will hear the motion for injunctive relief less than a week from the date of this order. Because plaintiff seeks only injunctive relief, the case is nearing its conclusion. If the court dismissed this case or transferred it to another venue, another court would have to take significant time acquainting itself with the facts presented herein. The fact that the July 6 shareholder's meeting is rapidly approaching would further complicate a transfer. The court believes it is in the interest of both parties to know their position relative to this proceeding before that meeting. All of these considerations suggest that "judicial economy" supports the court's exercise of jurisdiction.

### 4. Probable Situs of Discovery

This case will require the parties to take depositions in California, Kansas, and elsewhere. Similarly, important documentary evidence is located in both Kansas and California. Because there is not an overwhelming majority of evidence in any district, the court finds this factor to be neutral in assessing whether defendant has established constitutionally relevant inconvenience.

### 5. Nature of Regulated Activity and Extent of Non–California Impacts

It is unquestionable that the securities industry is subject to extensive and pervasive regulation. This fact generally favors a broad assertion of jurisdiction. Additionally, defendant's relevant business activities, i.e., his efforts to obtain a seat on plaintiff's Board, have significant impact outside of defendant's home state of California. His efforts, if successful will impact the operations of a national company by altering the make-up of its Board of Directors. Such change would undoubtedly have impact upon shareholders throughout the country. More specifically, an alteration of the Board will have a significant impact on both the current directors and the many employees of plain-

tiff who reside in the Wichita, Kansas area. Even if unsuccessful, defendant's efforts will have an impact on the Kansas-based board of directors by introducing negative and allegedly inaccurate information to the many shareholders of plaintiff's common stock. All of these non-California impacts weigh in favor of finding jurisdiction.

### 6. Conclusion

Defendant has failed to establish that the court's exercise of jurisdiction will infringe upon his liberty interests. Litigation in Kansas will not be "so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." Therefore, the court finds that its assertion of jurisdiction over defendant does not violate the fundamental fairness and reasonableness standards required by the Fifth Amendment. The defendant's motion to dismiss is denied.

### III. Motion for Change of Venue Pursuant to 28 U.S.C. § 1406(a) and 1404(a)

■ Defendant first asserts improper venue and requests a transfer pursuant to section 1406(a), which states:

> The district court of a district in which a case is filed laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). The venue provision of the Securities Exchange Act is found at 15 U.S.C. § 78aa, as indicated above. Pursuant to § 78aa, venue is proper in a district where (1) the defendant is an inhabitant; (2) where the defendant is found; (3) where the defendant transacts business; or (4) where any act or transaction constituting the violation occurred. Because defendant is neither an inhabitant of the forum nor found herein, venue only lies if some act constituting the violation oc-

curred in Kansas or defendant "transacts business" in Kansas. "It is well settled that a single act committed within the district in furtherance of a scheme to defraud is sufficient to confer venue under the 'act or transaction' requirement of § 78aa. The act need not constitute the core of the violation as long as it was more than an immaterial part of the alleged violation." *Wichita Federal Sav. and Loan Ass'n v. Landmark Group, Inc.*, 674 F.Supp. 321, 328 (D.Kan.1987). *See also Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204 (5th Cir.1960) ("We think that any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient").

Here, defendant sent mail into Kansas to accomplish two important steps in furtherance of his "scheme" to issue allegedly fraudulent proxy material. The February 22, 2001 letter to plaintiff that included a stockholder's notice of intent to run is a necessary step for initiating a proxy contest. Plaintiff's bylaws required defendant to give such notice before a valid contest could ensue. Secondly, defendant sent his May 23, 2001 letter to plaintiff requesting a list of all of plaintiff's shareholders. Obtaining the location of shareholders is an essential step in furtherance of plaintiff's scheme to allegedly defraud plaintiff's shareholders through misrepresentations contained in the proxy materials at issue in this case. While these are clearly not "core" acts to the alleged violations, they are acts in furtherance of plaintiff's "scheme." Because these acts occurred in Kansas, venue is proper in this district.

■ Defendant next asserts the inconvenience of this forum and requests a transfer pursuant to section 1404(a).

Transfers to another district are authorized by 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Congress enacted section 1404 to permit easy change of venue within a unified federal system. Although drafted in accordance with the forum non conveniens doctrine, courts enjoy greater discretion to transfer an action pursuant to § 1404(a) than to dismiss an action based upon forum non conveniens. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir.1991). The moving party bears the burden of establishing that the existing forum is inconvenient. *Id.*

The district court has discretion to order transfers based on an individualized, case-by-case consideration of convenience and fairness. *Id.* at 1516. The Tenth Circuit has identified factors to be considered:

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). Unless the balance is strongly in favor of the movant, the court should rarely disturb the plaintiff's choice of forum. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992). Merely shifting the inconvenience from one side to the other is not a permissible justification for a change of venue. *Id.*

The court finds that defendant's requested transfer is unwarranted in this case. Trial in Kansas will inconvenience defendant, but trial in California would equally inconvenience plaintiff. Defendant has not established that its relative inconvenience is sufficiently disproportionate to overcome plaintiff's presumptive right to select a forum. In fact, little difference exists between the level of inconvenience either party would suffer by being forced to litigate outside their respective preferential forums. Both parties would have inconvenience relating to witness transportation and the taking of depositions. Conflict of law issues are negligible and enforceability of any potential judgment is not at issue. Because this case primarily involves a Securities Exchange Act claim, the local court/local law factor is neutral. Finally, the court does not believe that its docket is any more or less congested than that of the California courts, and the speed with which this case is progressing does not favor transfer. Because a venue transfer would succeed only in shifting the inconvenience to plaintiff, the court will not disturb plaintiff's choice of forum, which is entitled to significant deference.

## IV. Motion to Stay Discovery Pending Outcome of Present Motion

Because of the expedited procedure surrounding the motion to dismiss, the court did not rule on the motion to stay discovery independently. Defendant's discovery motion assumes a delay in the court's decision on the motion to dismiss. Given the court's prompt consideration and denial of defendant's motion to dismiss, the motion to stay discovery is now moot. For that reason, the court denies the motion.

IT IS THEREFORE ORDERED this 15th day of June, 2001 that defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer for improper or inconvenient venue (dkt. no. 16) is denied; motion to stay discovery pending outcome of motion to dismiss (dkt. no. 16) is denied.