Filed: September 5, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

─────────────────

No. 01-1823
(CA-01-2316)

─────────────────

Margaret Gilchrist, et al.,

                                        Appellants,

        versus

General Electric Capital Corporation,

                                Plaintiff - Appellee.

─────────────────

O R D E R

─────────────────

        The court amends its opinion filed August 16, 2001, as follows:

        On page 4, second full paragraph, line 1 -- the paragraph is corrected to begin "On or about May 3, 2001."

        On page 4, fourth full paragraph, line 5 -- the phrase "Spartan agreed to the receivership" is corrected to read "Spartan did not object to the receivership."

        On page 5, third full paragraph, line 1 -- the words "GE obtained" are corrected to read "the receiver obtained."

On page 8, first full paragraph, line 12 -- the bracketed phrase "to address the WARN Act claims" is corrected to read "address the WARN Act claims."

On page 10, first full paragraph, line 7 -- the phrase "the July 11 order" is corrected to read "the June 11 order."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

MARGARET GILCHRIST; JOHN BROWN;
GLORIA RENEW; MARTHA GRIFFIN;
ESTRELLA D. ARD; GRANT L. COBB;
MANUEL HOUSE; CLIFFORD GRIFFIN;
MARY E. MOORE; MARSHALL
KITCHENS; DANIEL A. BEARD; LINDA
FISHBURN; LILLIE M. SAMUELS;
DELORES A. WILLIAMS; CORAL L.
HYDE; PATRICIA GRUBBS; BRENDA
BEAL; ANNETTE E. IRBY; RUBY H.
MCCULLOUGH; BRENDA BUSH; JOSIE
M. HEARST; TUYET T. PARHAM;
CORINE P. ROBBIN; ADA S. SPIVEY;
NGUYEN THU YOUNG; THOMASENIA J.
WEAVER; CARRIE THURMOND;

DOROTHY M. FRANKLIN; ERNESTINE
ESTES; WARREN CARTER; JOHN DIGGS;
DONNIE SPIRES; ROBERT E. COOPER;
CORA K. JAMES; BARBARA ROYE;
MIA FARROW; WILLIE E. SPIVEY;
SHIRLEY A. DONALDSON; THOMAS
HENLEY; STAR-DELTA ELECTRIC
COMPANY; MOTION IND; SILVER SHEET
METAL, INCORPORATED; CLAIR
TURNER; THU KIM VO; MY VAN VO;
EDWARD L. SLOT, SR.; RICKY
JACKSON; WANESSA GILMORE;
PATRICK THURMOND; DENNIES L.
SCOTT; LARRY W. WHITE; FRANCIS
A. GREINER; MARY E. CLARK;

No. 01-1823

RICHARDEAN P. CLARK; CHT R.
BEITLICH CORPORATION, Petitioning
creditors in an involuntary
bankruptcy in the United States
bankruptcy Court for the Southern
District of Georgia,
Appellants,

v.

GENERAL ELECTRIC CAPITAL
CORPORATION,
Plaintiff-Appellee,

and
SPARTAN INTERNATIONAL,
INCORPORATED, CLEVELAND MILLS
COMPANY; HOME FURNISHINGS,
INCORPORATED,
Defendants-Appellees,

and

PETER L. TOURTELLOT, Receiver,
Appellee,

and

AVONDALE MILLS, INCORPORATED,
Movant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
Margaret B. Seymour, District Judge.
(CA-01-2316)

Argued: August 2, 2001

Decided: August 16, 2001

Before NIEMEYER, KING, and GREGORY, Circuit Judges.

2

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge King and Judge Gregory joined.

_____

## COUNSEL

**ARGUED:** John Bush Long, TUCKER, EVERITT, LONG, BREWTON & LANIER, P.A., Augusta, Georgia; Louis Saul, SAUL & MITCHELL, P.C., Augusta, Georgia, for Appellants. James A. Pardo, Jr., KING & SPALDING, Atlanta, Georgia; Robert L. Widener, MCNAIR LAW FIRM, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Joseph B. Mitchell, III, SAUL & MITCHELL, P.C., Augusta, Georgia; James Thomas Wilson, Jr., JAMES T. WILSON, JR., P.C., Augusta, Georgia, for Appellants. Sarah Robinson Borders, Mark M. Maloney, Brian C. Walsh, KING & SPALDING, Atlanta, Georgia; Michael M. Beal, MCNAIR LAW FIRM, P.A., Columbia, South Carolina; Paul R. Hibbard, JOHNSON, SMITH, HIBBARD & WILDMAN, L.L.P., Spartanburg, South Carolina, for Appellees.

_____

## OPINION

NIEMEYER, Circuit Judge:

When Spartan International, Incorporated, and its subsidiaries (collectively "Spartan") closed their doors for business, their major creditor commenced this debt-collection action in the District of South Carolina under State law. To facilitate the foreclosure of the creditor's lien interest in Spartan's assets, the district court appointed a receiver for all of Spartan's assets. It also issued an injunction directed to "all persons," commanding them not to file any action that "affects" Spartan's assets.

A week later, over 50 creditors in the Southern District of Georgia (the "Georgia creditors") filed a petition against Spartan for involuntary bankruptcy. The district court in South Carolina declined to recognize the automatic stay of all judicial proceedings imposed by 11 U.S.C. § 362(a) with the filing of the bankruptcy petition and found

3

the Georgia creditors in contempt of court, but allowed them to purge their contempt by withdrawing their bankruptcy petition.

On this interlocutory appeal taken by the Georgia creditors, we conclude, in the circumstances of this case, that the district court erred in failing to recognize the stay imposed by 11 U.S.C. § 362(a), and therefore we reverse and remand for proceedings consistent with this opinion.

I

On or about May 3, 2001, Spartan closed its doors and turned over its assets to General Electric Capital Corporation ("GE"), which had extended Spartan a line of credit of $65 million, secured by substantially all of Spartan's assets. At the time, Spartan owed GE approximately $35 million.

Spartan had been engaged in the manufacture of textiles for over 100 years, and its headquarters were located in Spartanburg, South Carolina. It operated textile mills in six different locations, four in South Carolina and two in Georgia. Spartan closed its business because it was unable to meet its obligations to GE, largely as a result of the generally deteriorating business conditions faced by the domestic textile industry.

Invoking the district court's diversity jurisdiction, GE promptly filed a verified complaint commencing this action against Spartan for collection of the indebtedness and for the appointment of a receiver to take custody of Spartan's assets, dispose of them, and pay GE the amounts owed. Spartan did not object to the receivership, and, on May 22, 2001, on GE's motion and without notice to creditors of Spartan, the district court appointed a receiver and required him to file a $500,000 bond. Paragraph 5 of the district court's May 22 order provides in relevant part:

> The Defendants [Spartan], as well as their agents, servants, employees, attorneys and any persons acting for or on behalf of the Receiver Estates, and any persons receiving notice of this order, by personal service or otherwise, having

4

possession or control of any of the property, business, books, records, accounts, or assets of the Defendants or the Receiver Estates are hereby directed to deliver the same to the Receiver, and <u>all persons are enjoined from in any way commencing or prosecuting any action, suit or proceeding that affects the Receiver Estates or the Defendants</u>.

(Emphasis added). The order required that the receiver serve a copy of the May 22 order on "all persons identifiable from the books and records of the Defendants as either employees as of May 3, 2001 or persons listed in the Defendants' accounts payable registers as soon as reasonably practicable by first-class mail."

The receiver duly filed a copy of this order in each district where Spartan had assets, including the Southern District of Georgia where one of its mills was located. The receiver also promptly commenced the liquidation of Spartan's assets, selling the mill in the Southern District of Georgia on May 31, 2001, for $4.2 million. This sale was also made without notice to creditors. The receiver formally notified creditors and employees of the receivership in early June 2001.

Acting with actual notice of the May 22 order but before receiving formal notice, over 50 former employees of Spartan's Georgia mill who had claims against Spartan for wages, health care benefits, and amounts alleged to be due under the WARN Act, 29 U.S.C. § 2101 <u>et seq</u>., filed an involuntary-bankruptcy petition against Spartan in the Southern District of Georgia, where these petitioning employees had worked for Spartan. These Georgia creditors also filed, with their petition, a motion for the appointment of an interim trustee. GE objected to the appointment of an interim trustee and filed a motion to dismiss the bankruptcy petition or to transfer it to the District of South Carolina. Similarly, the receiver, on behalf of Spartan, filed a motion to dismiss the bankruptcy proceeding or to transfer the case to South Carolina based on improper venue. Following a hearing on June 6 and 7, 2001, the bankruptcy court overruled the objections of GE and the receiver, denied their motion to dismiss or transfer, and appointed an interim trustee.

While that hearing in Georgia was in progress, the receiver obtained a temporary restraining order from the District of South Carolina dated

5

June 7, 2001, which specifically enjoined 38 listed Georgia creditors from "undertaking any action in furtherance of the involuntary petition filed against Spartan International in the Southern District of Georgia." This order was brought to the attention of the bankruptcy judge during the course of the hearing, and in response, the bankruptcy judge stated:

> The TRO did not enjoin this Court from acting. I received a copy of the TRO after all parties had completed their presentation on June 7, 2001 on the issues now determined but prior to my ruling from the bench. An interim trustee now appointed is not covered under the scope of the TRO. Additionally, the act of petitioning Judge Seymour [district judge in the District of South Carolina] for the TRO by Mr. Beal, attorney on behalf of Mr. Tourtellot, the receiver appointed by Judge Seymour, violated the provisions of 11 U.S.C. § 362(a)(1) and (3). Any act taken in violation of the automatic stay of § 362 is void.

The bankruptcy court also directed the interim trustee to show cause on June 9, 2001, "why he or she should not be immediately directed to pay benefits from the assets recovered by the interim trustee to the petitioning creditors and all other similarly situated former employees under [the WARN Act]."

A few days later, on June 11, 2001, the district court in South Carolina held a hearing, at which the receiver, the interim trustee, and the lawyer for the Georgia creditors presented their positions and following which the court issued an order, dated June 11, 2001, finding the Georgia creditors in contempt of the district court's May 22 order. But the court added, "The [Georgia] Creditors may purge themselves of contempt by withdrawing the involuntary petition in bankruptcy within five days of the date of this order." The district court also directed that "any persons desiring to proceed in bankruptcy court or otherwise evade the restrictions of paragraph 5 of [the May 22 order] appointing receiver may do so only upon prior application to this court for permission." In response to the interim trustee's argument that the district court was bound by the automatic stay imposed by 11 U.S.C. § 362(a), the district court stated that it had "`jurisdiction to determine not only its own jurisdiction but also the more precise

6

question whether the proceeding pending before it is subject to the automatic stay,'" quoting In re: Baldwin-United Corp. Litigation, 765 F.2d 343, 347 (2d Cir. 1985). Exercising this power, the district court concluded that it was not subject to the stay imposed by § 362(a). Rather, relying on the All Writs Act, 28 U.S.C. § 1651, the court declared that it had authority to issue writs necessary to aid in protecting its jurisdiction. It explained that because it had properly entered the receivership order, its injunction of May 22, 2001 was authorized under the All Writs Act:

> The court finds and concludes that issuance of an injunction pursuant to the [All Writs] Act is a necessary means of allowing the Court to discharge its duties and to prevent creditors of Defendants from collaterally attacking the court's order appointing receiver [the May 22 order]. The court finds use of the [All Writs] Act to be justified under the facts presented, wherein the [Georgia] Creditors have made no showing that they will obtain relief in bankruptcy court for their unsecured claims, or that their claims may be paid over and above those claims of secured creditors and those of other unsecured creditors.

After entry of the district court's June 11 order, the Georgia creditors, in an effort to purge their contempt, filed a petition in the bankruptcy court to withdraw their involuntary petition in bankruptcy. The bankruptcy court, however, denied the petition, concluding that the statutory requirements for dismissal of an involuntary-bankruptcy petition had not been met. It did, however, stay further proceedings in the bankruptcy case pending our review of the South Carolina district court's orders.

The Georgia creditors filed this appeal to review the district court's May 22, June 7, and June 11 orders, and they filed a motion to expedite the appeal. By order dated July 6, 2001, we granted the petition to expedite the appeal and heard oral argument from the parties on August 2, 2001.

II

At the outset, we must resolve GE's challenge to our jurisdiction, made on the ground that the Georgia creditors did not have standing

7

to appeal because they were not parties to the action below, having never intervened there to challenge the district court's injunctions. As GE states its position, "Because the appellants have elected not to intervene or to otherwise become parties to this action, they lack standing to appeal." GE also argues that because the Georgia employees purged their contempt by filing a motion to withdraw their petition in bankruptcy, their appeal is moot.

Appearing informally before the district court during the June 11 hearing, two of the Georgia creditors, who worked and now live in the Southern District of Georgia, contended that they were not subject to the district court's May 22 order and therefore could not have violated it when they filed their petition in bankruptcy. First, they argued that the language of the order did not prohibit the filing of a petition in bankruptcy. Second, they suggested that the district court did not have power to enjoin them because they were not in the district of South Carolina and, to be effective, all creditors had to be made parties. As counsel for these Georgia creditors argued, "I think your Honor would have to make all the people parties to the lawsuit as opposed to a bankruptcy in order to [address the WARN Act claims]. In other words, you would have to make 1200 employees party to this particular lawsuit." Finally, counsel for these Georgia creditors argued that the district court's receivership order, directing the receiver to pay GE on its secured claim, violated South Carolina Code § 29-11-10, which gives manufacturing employees a lien in the products on which they worked superior to that of secured creditors, as does similar Georgia law, and that therefore the May 22 order was illegal in directing a violation of that priority.

Although GE is correct in pointing out the general rule that only parties may appeal an adverse judgment, it must also recognize that in limited circumstances courts have held that nonparties have a right to challenge on appeal an order directed against them in a proceeding to which they were not a party. See generally S.E.C. v. Lincoln Thrift Ass'n, 577 F.2d 600, 602-03 (9th Cir. 1978); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110-12 (1969) (noting that a parent company was entitled to appeal judgments and an injunction entered against it, when its subsidiary, but not it, was the named party to the action below). In R.M.S. Titanic, Inc. v. Haver, 171 F.3d 943 (4th Cir. 1999), we faced a circumstance similar to that

8

presented here. The district court entered a preliminary injunction against a person who had never been served process and probably would not have been subject to service of process. Even though the persons against whom the order was directed had notice of the district court's order, we concluded that "[d]ue process dictates and principles of fairness counsel that [appellant] be given an opportunity to challenge the district court's assertion of jurisdiction over it, particularly when the court specifically entered an injunction against [appellant]." Id. at 955. We also noted in Titanic that the plaintiff's position in seeking an injunction against the nonparty in the district court was inconsistent with its position that the persons covered by the injunction did not have standing to challenge the injunction on appeal. See id.

In the case before us, the district court clearly had personal jurisdiction over the parties -- GE, Spartan, and the receiver -- as well as in rem jurisdiction over the assets of Spartan. And while a district court's in rem jurisdiction ordinarily extends only to property within its jurisdiction, in the case of a federal receivership, Congress has conditionally extended the scope of a court's jurisdiction. See 28 U.S.C. §§ 754, 959. Section 754 provides that a receiver may be appointed for property situated "in different districts," who thereby becomes vested with jurisdiction and control over such property subject to the condition that the receiver file a copy of the complaint and order of appointment in the district where the subject property is located, within ten days. It also provides that the receiver may sue and be sued in any district where such property is located without leave of the appointing court. See 28 U.S.C. § 754. But such in rem jurisdiction over property in other districts does not give a district court personal jurisdiction over persons in such other districts absent an express congressional grant of personal jurisdiction. While the court has power to protect the res before the court, any injunction entered against individuals is an in personam action that may be enforced against individuals only over whom the court has personal jurisdiction. See Titanic, 171 F.3d 957-58. Thus, unless the district court had personal jurisdiction over the Georgia creditors and they were served with process, the district court could be without power to enforce an injunction against them, unless, of course, they could be shown to have been "in active concert or participation with" parties over whom the court had jurisdiction. See Fed. R. Civ. P. 65(d).

9

While an absence of personal jurisdiction has not yet been explicitly asserted nor been addressed by the district court, the Georgia creditors had several nonfrivolous reasons on which to question the district court's authority to issue an injunction directed against them personally, which would reasonably justify their reluctance to intervene below. But when they were faced with a contempt finding, made in the June 11 order, they obviously had a legitimate reason to want to challenge the order on appeal.

GE argues that even if the Georgia creditors have that right, their appeal is moot because the Georgia creditors purged the contempt finding by filing a motion to withdraw their petition in bankruptcy. The Georgia creditors note, however, that they filed their motion to withdraw only because the district court took a position that it had effectively ordered them to do so when it found them in contempt and declared that this finding could be purged only upon compliance with the court's order to withdraw the petition. But they continue to disagree with and challenge the district court's authority both to enter the injunction against them and to find them in contempt.

Moreover, while the Georgia creditors did file a motion to withdraw their bankruptcy petition, they could not withdraw the petition because their motion was denied by the bankruptcy court. Therefore their efforts may not in fact have been sufficient to purge themselves of contempt. The district court's order authorized relief from contempt only "by withdrawing the involuntary petition in bankruptcy."

More importantly, however, the injunctive orders directed against these Georgia creditors have not been withdrawn and remain in effect. GE did not hesitate, in oral argument, to take the position that if the Georgia creditors were again to violate the July 11 order, they could again be found in contempt.

Accordingly, we conclude that both the contempt finding, as well as the continuing effect of the injunctions, provide a sufficient threat to the Georgia creditors to give them standing to appeal. In doing so, we do not rule on the question whether the district court has personal jurisdiction over the Georgia creditors. That issue has been addressed neither by the parties nor by the district court.

10

III

We come now to the question of whether the district court erred in concluding that its receivership proceeding was not subject to the automatic stay provisions of 11 U.S.C. § 362(a) and that therefore the receivership should be given preference as the first-filed case. The district court concluded that it did have preference because when the receivership was commenced, it took legal custody of Spartan's assets and was therefore entitled to employ the All Writs Act to protect its exclusive jurisdiction over those assets. But even though the district court in South Carolina was the court that first took custody over the assets, it made no assessment of whether the assets could be, as a matter of equitable administration, better collected, managed, and disposed of in a bankruptcy proceeding. And it never relied on any exception to § 362(a) to avoid that provision's mandate.

We begin our analysis by recognizing that the district court has within its equity power the authority to appoint receivers and to administer receiverships. See Fed. R. Civ. P. 66. And when receivers are appointed by a federal court, they may sue and be sued as provided by federal law. See 28 U.S.C. §§ 754, 959. Moreover, receivers appointed by a federal court are directed to "manage and operate" the receivership estate "according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 U.S.C. § 959(b).

We also confirm that the district court has within its equity power the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651, and through its injunctive powers, consistent with Federal Rule of Civil Procedure 65. Of course, the exercise of this authority is always subject to other limitations, statutory and constitutional, which limit the jurisdiction of federal courts.

Thus, in appointing the receiver in this case for the assets of Spartan, the district court acted within the scope of its equity power. In reaching that conclusion, however, we do not review the terms of the order appointing the receiver, particularly paragraph 5. Moreover, when it appointed the receiver, the district court created a receivership

11

estate over which it had <u>in rem</u> jurisdiction, even though the property might be located in other districts. <u>See</u> 28 U.S.C. § 754 ("A receiver appointed in any civil action . . . involving property . . . situated in different districts shall . . . be vested with complete jurisdiction and control of all such property"). But its jurisdiction over assets in other districts is dependent upon the receiver's filing a copy of the complaint and appointment in that district, a condition that the receiver fulfilled in this case. <u>See id</u>. Because assets and personal jurisdiction may lie beyond the jurisdictional reach of the appointing court, 28 U.S.C. §§ 754 and 959 authorize the receiver to sue and be sued in connection with the receivership estate in any district court without an ancillary appointment. Thus, the statutory provisions for receiverships anticipate that when a receivership involves assets in different districts, there may be multiple litigations initiated by or against the receiver in those districts.

After the district court appointed a receiver and asserted <u>in rem</u> jurisdiction over assets of Spartan, more than 50 creditors in the Southern District of Georgia filed a petition against Spartan for involuntary bankruptcy under 11 U.S.C. § 303, thus commencing a bankruptcy proceeding there, and the bankruptcy court appointed an interim trustee in that proceeding. By virtue of the jurisdictional provisions of the United States Code, and the commencement of a bankruptcy case against Spartan, the bankruptcy court obtained "exclusive jurisdiction of all of the property, wherever located, of [Spartan] as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e) (emphasis added). In addition, the filing of the petition in bankruptcy "operates as a stay, applicable to all entities, of the . . . continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was commenced before" the bankruptcy petition. 11 U.S.C. § 362(a)(1). To give effect to its jurisdiction, the bankruptcy court is given broad equitable powers, <u>see</u> 11 U.S.C. § 105, with nationwide service of process, <u>see</u> Bankr. R. 7004(d).

Under the plain meaning of these statutory provisions, proceedings in the District of South Carolina were stayed as of May 31, 2001, when the petition in bankruptcy was filed. When the interim trustee appointed by the bankruptcy court appeared before the district court on June 11 to urge that the district court recognize the operation of

12

the stay, the court properly concluded that it had authority to determine its own jurisdiction, see Texas & P. Ry. v. Gulf, Colo. & Santa Fe Ry. Co., 270 U.S. 266, 274 (1926); McGowen v. Harns, 666 F.2d 60, 66 (4th Cir. 1981), and more particularly that it had jurisdiction to determine whether the proceeding before it was subject to the statutory stay, see U.S. Dep't of Hous. and Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927 n.11 (4th Cir. 1995); Baldwin United, 765 F.2d at 347. In exercising its authority to determine its own jurisdiction, however, the district court concluded that because it already had jurisdiction over the receivership estate, it should protect that jurisdiction through the All Writs Act, 28 U.S.C. § 1651, and that it need not recognize the effect of 11 U.S.C. § 362(a). The court provided no explanation of why, as a matter of equity, the bankruptcy process was not superior to a receivership in the liquidation of a large business, with assets in several jurisdictions and with thousands of creditors, some of whom were claiming liens superior to the lien relied upon by GE when it initiated the receivership proceeding. More importantly, it provided no explanation of why the terms of § 362(a) were not applicable.

Similarly, in their briefs and arguments presented to us, counsel for GE and the receiver advanced no exception to § 362(a) that would be applicable. Instead, they argued for a "first-filed" principle, urging that the court which first takes custody of assets for liquidation should be given priority.

We cannot agree. Our examination of the Bankruptcy Code reveals that Congress intended that the bankruptcy process be favored in circumstances such as these. Section 1334(e) of title 28 is unequivocal in its grant of exclusive jurisdiction to the bankruptcy court, and § 362(a) imposes an automatic stay on all proceedings merely upon the filing of a bankruptcy petition. If we were to frustrate these express provisions to further a first-filed policy, we would have to deny bankruptcy jurisdiction to every bankruptcy court in which foreclosure proceedings had already commenced against the debtor's property, on the grounds that the in rem nature of the foreclosure proceeding precludes the bankruptcy court from taking custody of the res. Such a jurisdictional limitation on bankruptcy proceedings would severely limit the efficacy of bankruptcy. In the absence of express language suggesting that Congress intended for bankruptcy jurisdic-

13

tion to be so limited, we believe it would frustrate Congressional intent to imply such a limitation based solely on consideration of a first-filed policy.

Even if general equitable principles could modify the application of statutory jurisdictional grants, we do not believe that the equities favor the common-law receivership process over the highly developed and specific bankruptcy process. The procedural requirements for liquidating a large corporation with thousands of creditors, many of whom might challenge the priority of liens and the adequacy of asset sales, present a task that would push the receivership process to its limits. See Baldwin-United, 765 F.2d at 348 ("[T]o whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and the authority of the District Court to administer consolidated pretrial proceedings, the equities favor maintenance of the unfettered authority of the Bankruptcy Court"). In this case it can be seen, even from the initial transactions in the receivership, that the customized receivership mechanisms are wanting in comparison with established bankruptcy process. For example, when the receiver in this case sold a mill in Georgia for $4.2 million, the creditors had no advance notice of the transaction, and some have challenged the adequacy of compensation, proffering evidence that the mill was worth over $20 million. More important to the Georgia creditors in this case, the district court did not have in place a mechanism to adjudicate the relative priority of liens. GE claims a first lien by reason of its perfected security interest in most of the assets of Spartan and proffered an order by which the proceeds of liquidation would be paid to it as the superior lien holder. But Spartan's employees claim a prior statutory lien in assets produced by them at the manufacturing plants at which they worked, as created by state law. While they surely could file claims in the receivership, the process for making and adjudicating such claims was not spelled out.

To resolve the claims involving a large corporation with multiple places of business in different districts and thousands of creditors, a bankruptcy court has judicial tools better suited and more specifically tailored to the task, and those tools include nationwide service of process. See Bankr. R. 7004(d). While it is true that the district court has broad equity power, any attempt to use that power to supervise a complex corporate liquidation, in the absence of special circumstances,

14

would ultimately be more clumsy and expensive than long-established bankruptcy procedures. At bottom, we are persuaded that in the circumstances of this case, the district court should have recognized the stay provisions of § 362(a).

Unable to direct us to an exception to § 362(a), GE argues that the entire bankruptcy proceeding is void ab initio because it was filed in violation of the district court's May 22 order. But even if plaintiffs were effectively subject to the court's order not to file a lawsuit or to commence an action in Georgia, this impediment could not undermine the bankruptcy court's jurisdiction to entertain the matter. While it might provide a basis for that court's dismissing the action, its power to exercise jurisdiction is determined by Congress, not by a competing court order. In this case, the petition in bankruptcy was regulated by 28 U.S.C. § 1334 and the Bankruptcy Code. If those provisions are not complied with, GE's remedy would be to present its objection to the bankruptcy court. But having such an objection does not render the proceeding void ab initio. To reach that conclusion would make the injunction of one court determinative of the jurisdiction of another, setting courts in different districts against one another. This would completely frustrate the scheme of courts created by Congress. In short, until the bankruptcy case is dismissed or otherwise closed, it is viable and must be recognized by other courts.

IV

In reviewing the district court's orders in the receivership proceeding, we do not pass on the legitimacy of the bankruptcy proceeding or on any defense that has been or that may be presented in it. Those are matters that must be addressed to the bankruptcy court in the Southern District of Georgia. On this appeal, we only determine that, in the present circumstances, the stay provided by 11 U.S.C. § 362(a) must be recognized until further order in the bankruptcy proceeding.

Accordingly, we reverse the district court's ruling on the stay and remand for proceedings appropriate to determine the applicability of that stay to the district court's orders and the receivership proceeding and to enter such order as is appropriate.

REVERSED AND REMANDED

15