FILED
United States Court of Appeals
Tenth Circuit

May 27, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

R. WAYNE KLEIN, the Court-
Appointed Receiver of U.S. Ventures
LC, Winsome Investment Trust, and
the assets of Robert J. Andres and
Robert L. Holloway,

Plaintiff-Appellee,

v.

WILLIAM R. CORNELIUS, and
CORNELIUS & SALHAB,

Defendants-Appellants.

------------------------------------------------

U.S. COMMODITY FUTURE
TRADING COMMISSION,

Amicus Curiae.

No. 14-4024

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. NO. 2:11-CV-01159-DAK)

Berry Dunbar Bowen, Houston, Texas, for Appellants.

David C. Castleberry (Christopher M Glauser, with him on the brief) Manning
Curtis Bradshaw & Bednar LLC, Salt Lake City, Utah, for Appellee.

Before **TYMKOVICH**, **HOLMES**, and **BACHARACH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

---

This is an appeal from the district court's grant of summary judgment to the court-appointed receiver for Winsome Investment Trust, a business entity whose founder, Robert J. Andres, caused it to illegally distribute funds as part of a Ponzi scheme. The court found that Andres had fraudulently transferred funds from Winsome to William T. Cornelius and his law firm, Cornelius & Salhab, and that the receiver could recover these funds on Winsome's behalf under the Uniform Fraudulent Transfer Act (UFTA). Cornelius, who was unaware of the fraud, raises several challenges to the district court's jurisdiction and its judgment on the merits.

We affirm. The receiver was entitled to sue Cornelius in Utah, and no federal jurisdictional impediments prevent the district court from reaching the UFTA claim. The district court also correctly concluded the payments to Cornelius violated the UFTA and the four-year statute of limitations did not bar the receiver's claim.

## I. Background

The Commodity Futures Trading Commission (CFTC) brought an action in Utah against Winsome and Andres, alleging that they operated a Ponzi scheme in violation of the Commodity Exchange Act (CEA). Winsome was a trading pool that would solicit investors with the promise of large profits. Although its

investments ultimately collapsed, Winsome, under Andres's control, gave the appearance of solvency by paying early investors with funds acquired from later investors. Winsome also made some payments to vendors and suppliers of the business, as well as other entities.

Cornelius and his Houston-based law firm were among the recipients. Between September 2006 and July 2007, Winsome paid Cornelius & Salhab a total of $90,000 to represent one of Andres's friends in a criminal proceeding in New Hampshire. The friend was not otherwise connected to Winsome, and Cornelius did not provide any services to Winsome directly.

After the CFTC got wind of the Ponzi scheme, it filed suit in Utah federal court against Winsome and Andres, as well as Andres's co-conspirator and a Utah-based company that the co-conspirator controlled. The CFTC sought a receiver to take over Winsome's assets. The court appointed R. Wayne Klein, who became responsible for controlling Winsome's and Andres's operations and records, managing and preserving their assets, collecting money owed to them, suing when necessary to preserve or increase their assets or to recover improper payments, and protecting the interests of their investors.

Klein's investigation of Winsome's operations revealed a number of questionable payments that might be recoverable under the CEA or the state UFTA. These included legal fees paid to Cornelius for representing the New

Hampshire defendant. Klein filed an action against Cornelius, and the district court granted summary judgment in Klein's favor.

We AFFIRM the district court. Pursuant to his appointment as receiver, Klein was entitled to void the payments to Cornelius as a fraudulent transfer and preserve them for victims of the Ponzi scheme.

## II.  Analysis

Cornelius claims the district court made a number of mistakes involving the Utah court's jurisdiction to hear claims against him and his firm, both based in Texas, and in concluding that the payments to the firm were recoverable under the UFTA. We first address the jurisdictional questions—subject matter jurisdiction, standing, and personal jurisdiction—and conclude that all were satisfied. We then discuss the UFTA, finding that the payments violated the Act and that Klein's claims were not otherwise barred by its four-year statute of limitations.

### A.  *Jurisdictional Claims*

Cornelius makes three jurisdictional challenges. First, he argues the CEA does not grant the district court subject matter jurisdiction to hear state fraudulent transfer claims against third-party recipients of Ponzi scheme funds. Next, he contends Klein lacked standing to assert the UFTA because Winsome was not a legal entity that could maintain its own fraudulent transfer claim. Finally, he claims the district court could not exercise personal jurisdiction over him because he lacked sufficient contacts with Utah.

## *1.  Subject Matter Jurisdiction Under the CEA*

Cornelius first argues that the CEA does not authorize a receiver to bring state fraudulent transfer claims in federal court against third-party recipients of Ponzi scheme funds.

We start with the CEA.  Section 13a-1 authorizes the CFTC to bring civil actions in federal court to enjoin violations of the CEA or "to enforce compliance with this chapter, . . . and said courts shall have jurisdiction to entertain such actions."  7 U.S.C. § 13a-1(a).  Among other things, the statute allows a court to prohibit by restraining order the transfer or disposal of assets and to appoint a temporary receiver to administer such an order or "perform such other duties as the court may consider appropriate."  *Id*; *see also SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) ("[T]he district court has broad powers and wide discretion to determine relief in an equity receivership." (quoting *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982)) (internal quotation marks omitted)).  In addition to the CEA, federal law provides receivers a broad grant of authority to sue in federal court to enforce rights over receivership property.  28 U.S.C. § 754.

But the statutory scheme does not prevent a receiver from also pursuing state-law claims in federal court.  In fact, the general grant of federal question jurisdiction under the CEA brings with it the power to hear "all other claims that are so related to" the original claim as to "form part of the same case or

controversy." 28 U.S.C. § 1367(a). Under this provision and 28 U.S.C. § 754, a receiver may bring ancillary state-law claims against entities alleged to have received unlawful payments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("[W]e have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments . . . ."); *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008) (holding that § 1367 allowed a receiver to bring a UFTA claim in federal court against a third party under ancillary jurisdiction where the primary lawsuit presented a federal question); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (holding that § 1367 allowed a receiver to bring a claim under a state fraudulent transfer act against third parties under ancillary jurisdiction where the primary lawsuit charged the violation of federal securities laws). A suit is ancillary to a receiver's appointment if it "seeks to accomplish the ends sought and directed by the suit in which the appointment was made." *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008) (quoting *Tcherepnin v. Franz*, 485 F.2d 1251, 1255–56 (7th Cir. 1973)).

Here, the district court enjoined Winsome from violating the CEA and tasked Klein with various responsibilities needed to enforce the injunction. The court not only ordered him to preserve or increase Winsome's assets, but also empowered him to sue in order to do so—a routine order well within the broad range of remedial functions allowed under § 13a-1. Moreover, it is clear that the

state-law claim against Cornelius is ancillary to the court's injunction against Winsome's violation of a federal statute, as well as the court's appointment of Klein to preserve Winsome's assets and recover improper payments: insofar as Klein alleges that Winsome improperly paid Cornelius, his present claim seeks to accomplish the goals of his appointment. We accordingly conclude the district court had subject matter jurisdiction to resolve Klein's UFTA claim.[1]

In resisting this conclusion, Cornelius argues that any relief against third parties must be achieved through either (1) 7 U.S.C. § 13a-2, which empowers state attorneys general to sue on behalf of their defrauded residents, or (2) 7 U.S.C. § 25, which provides a direct cause of action under the CEA for defrauded investors. But Klein is not acting directly on behalf of Winsome's investors. He is suing on Winsome's *own* behalf.

Cornelius next points to the Third Circuit's decision in *CFTC v. American Metals Exchange Corp.*, 991 F.2d 71, 78 (3d Cir. 1993). He argues it holds that a

---

[1] Cornelius also challenges the district court's authority to grant equitable relief by ordering him to return the funds, but this argument is without merit. Courts exercising equity jurisdiction have available a full range of equitable remedies. *See CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1344 (11th Cir. 2008) (holding an "unqualified grant of statutory authority" to issue injunctive relief under the statute also confers authority to issue a "full range of equitable remedies," including restitution); *FTC v. LoanPointe, LLC*, 525 F. App'x 696, 699 (10th Cir. 2013) (holding that even though the FTC Act did not expressly authorize courts to grant consumer redress, the grant of authority to provide injunctive relief carried with it "the full range of equitable remedies," including restitution and disgorgement).

receiver cannot seek to benefit defrauded investors by suing on behalf of the entities that defrauded them. But in that case the court only held the district court had miscalculated the amount of monetary relief. *Id*. at 77–78. In fact, the Third Circuit actually affirmed the district court's finding that it could impose ancillary relief against a third-party recipient of an unlawful transfer. *Id*. at 76 ("The district court did not err in imposing the ancillary relief of disgorgement.").

In sum, the district court had subject matter jurisdiction to resolve claims brought under the UFTA on Winsome's behalf.

### 2. Standing

Next, Cornelius contends that Klein does not have standing to bring a UFTA claim because Winsome itself cannot bring such a claim. He reasons that because Winsome is unincorporated and was subject to Andres's control, it is a mere alter-ego for Andres and therefore has no capacity to sue in its own right. Although Cornelius concedes Klein could nonetheless sue as a receiver for Andres's assets, he argues that Andres himself would not have a UFTA claim against third-party recipients of Winsome's funds. We disagree with Cornelius's assertion that Winsome cannot sue in its own right.

The UFTA provides rights and remedies for defrauded creditors. *See* Utah Code Ann. §§ 25-6-5, 25-6-8. But receivers may only sue to redress injuries to the entity in receivership, and not directly on behalf of the entity's creditors. *Scholes*, 56 F.3d at 753 (citing *Caplin v. Marine Midland Grace Trust Co.*, 406

-8-

U.S. 416 (1972)); *see also Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013); *Marion v. TDI Inc.*, 591 F.3d 137, 147 (3d Cir. 2010); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 798–99 (6th Cir. 2009); *Eberhard*, 530 F.3d at 132; *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005); *Goodman v. FCC*, 182 F.3d 987, 991–92 (D.C. Cir. 1999); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 25 (1st Cir. 1990).

The question then becomes whether Winsome itself qualifies as a defrauded creditor under the statute. The answer is yes, a business entity abused by a Ponzi scheme qualifies as a defrauded creditor. A Seventh Circuit case illustrates the point. In *Scholes*, 56 F.3d at 753, the court considered a state fraudulent transfer act similar to the UFTA. The defendant created corporations that sold interests in limited partnerships. Instead of using the sales' proceeds for their stated purposes, the corporations, under the defendant's control, paid various third parties. When a receiver for the corporations sued the third parties to recover the transfers, the third parties argued that because the corporations themselves had made the transfers, the corporations could not have been injured by them. The third parties asserted that the receiver was essentially acting on behalf of the injured creditors (those who had bought interests in the limited partnerships), rather than the corporations the receiver had been authorized to represent. The court disagreed, finding that because the corporations had been "evil zombies" under the defendant's "spell," they had been injured. *Id*. at 754. In essence, the

-9-

corporations were creditors themselves. *See Janvey v. Brown*, 767 F.3d 430, 437 (5th Cir. 2014) (holding that entities used by Ponzi schemers to make fraudulent transfers are considered defrauded creditors under the UFTA); *Wing v. Dockstader*, 482 F. App'x 361, 363 (10th Cir. 2012) (interpreting *Scholes* to hold that the receiver was a creditor of the scheme). Likewise, Winsome was under Andres's improper control when he fraudulently transferred its funds, and it was injured in its own right.

But Cornelius asserts that unlike the corporations in *Scholes*, Winsome has no independent existence because it does not fall into any category of business recognized by Texas law and was entirely subject to Andres's control. He likens Winsome to Andres's personal bank account.

In determining whether an entity has the capacity to sue or be sued, we look to the law of the state in which the district court is located. Fed. R. Civ. P. 17(b)(3). Utah law is contrary to Cornelius's position. "When two or more persons associated in any business . . . transact such business under a common name . . . they may sue or be sued by such common name." Utah R. Civ. P. 17(d). Formal legal recognition of the association is unnecessary. *See Weber Cnty. v. Ogden Trece*, 321 P.3d 1067, 1075–76 (Utah 2013).

Under Utah law, Winsome is an association of investors who pooled resources together and transacted business under the common name of Winsome Investment Trust. It had joint venture contracts with the investors on behalf of

-10-

the Trust, including bank accounts and other indicia of independence and separateness. Over the course of its existence, it made payments to some investors and even had its own website.

We thus agree with the district court that Winsome is an independent entity under Utah law and see no impediment for Klein to assert standing on behalf of Winsome to pursue a UFTA claim.

### 3. *Personal Jurisdiction*

Finally, Cornelius argues that the district court's exercise of personal jurisdiction violates the Constitution because he was not properly served with a complaint and does not have minimum contacts with the state of Utah.

Our case law requires that before "a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)) (internal quotation marks omitted).

As an initial matter, federal law allows nationwide service of process under the CEA. Klein's claims were based on 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property . . .

situated in different districts" is entitled to "complete jurisdiction and control" of that property, "with the right to take possession thereof." Section 754 moreover grants receivers the capacity to sue in any federal district court. In addition, 28 U.S.C. § 1692 provides that where a receiver is appointed for property located in different districts, "process may issue and be executed in any such district as if the property lay wholly within one district." In short, § 754 authorizes receivers properly appointed in one federal district to sue for, and take possession of, property in other districts, and § 1692 extends the appointing court's territorial reach to all districts in which receivership property is located. Read together, they allow nationwide service of process for receivers pursuing receivership property. *SEC v. Ross*, 504 F.3d 1130, 1145–46 (9th Cir. 2007); *SEC v. Bilzerian*, 378 F.3d 1100, 1105–06 (D.C. Cir. 2004); *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984); *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823–24 (6th Cir. 1981).

Having established that Cornelius is amenable to service of process in a district in which receivership property is located, we still must determine whether suing a Texas defendant in Utah accords with the minimal constitutional requirements of due process. Unlike service of process, "[t]he requirement that a court have personal jurisdiction flows . . . from the Due Process Clause. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484

-12-

U.S. 97, 104 (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)) (internal ellipses and quotation marks omitted).

Cornelius asserts that in evaluating his due process claim, we must apply the minimum contacts analysis spelled out in *International Shoe Corp. v. Washington*. 326 U.S. 310 (1946). *International Shoe* held that consistent with the Fourteenth Amendment, a state court cannot exercise jurisdiction over a defendant "not present within the territory of the forum" unless the defendant maintains minimum contacts with that state. *Id*. at 316. Likewise, a federal court cannot exert jurisdiction over a nonresident defendant unless the defendant has minimum contacts with the state in which the court is located. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

But we apply a different standard "in a federal question case where jurisdiction is invoked based on nationwide service of process." *Peay*, 205 F.3d at 1212. In *Peay*, we held that in those circumstances, "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Id*. To defeat federal jurisdiction, a defendant must establish that the "chosen forum will make litigation . . . gravely difficult and inconvenient" or, in other words, the forum district burdens the defendant with "constitutionally significant inconvenience." *Id*. (internal quotation marks omitted). We look to non-exclusive factors in considering whether defendants have met this burden, such as (1) the extent of contact with the forum state, (2) the inconvenience of

-13-

having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders. *Id.*

Even though a Utah entity paid for his legal services, Cornelius maintains he has no other contacts with Utah and thus the court has no personal jurisdiction over him. But like in the district court, Cornelius provides no argument going to the other factors, and the insignificance of contact is only one consideration. While it may not be decisive that Winsome's payment originated in Utah, Cornelius shoulders the burden of showing constitutionally significant inconvenience created from defending the UFTA claims in Utah. He has not done so.

Cornelius asserts in his reply brief that *Peay* does not apply because he was not a party to the original federal question claim. Although Klein and the district court have relied on *Peay* throughout these proceedings, Cornelius never made this argument or even addressed *Peay* in his opening brief. The argument is therefore waived. *United States v. Wayne*, 591 F.3d 1326, 1336 n.9 (10th Cir. 2010); *see also* Fed. R. App. P. 28(a)(8)(A). But in any event, the better analysis is that Klein's UFTA claim is ancillary to the CFTC enforcement action, and that action involves a federal question. The UFTA claim is therefore "part of the same case or controversy" as the federal question claim, 28 U.S.C. § 1367, and is necessary to enforce judgments in the original case. *See Peacock*, 516 U.S. at

356. And where a district court exercises personal jurisdiction over a defendant for a federal question claim, it may exercise personal jurisdiction over that same defendant for a supplemental state-law claim. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). Other courts have gone a step further, holding that where a receiver enjoys nationwide service of process and properly serves an out-of-state defendant, *who was not a party* to the federal question suit, for an ancillary claim, the court has personal jurisdiction over that defendant. *See Haile*, 657 F.2d at 821, 826; *see also SEC v. Vision Commc'ns*, 74 F.3d 287, 291 (D.C. Cir. 1996) (holding that had the receiver complied with the filing requirements of § 754, so as to establish control over state contract rights in a foreign district, "the court might then have been able to enjoin [foreign] non-parties [to the original federal question action] . . . from interfering with the court's receiver's control" over those rights). But because Cornelius has waived any argument to the contrary, we need not resolve this issue in this case.

Next, Cornelius makes a statutory argument, contending that §§ 754 and 1692 do not confer *in personam* jurisdiction over him. He contends that only an *in rem* claim against the receivership property can be maintained in the district where the property is located—here, the legal fees paid to Cornelius in Texas. He points to a First Circuit case, *American Freedom Train Foundation*, 747 F.2d at 1073–74, but that case is readily distinguishable since the receiver there had not served proper process on the out-of-state defendants, *id.* at 1072. In direct

-15-

contrast to Cornelius's position, the court actually concluded that "minimum contacts analysis . . . is simply inapposite" where § 754 and § 1692 are satisfied. *Id*. at 1073 (quoting *Haile*, 657 F.2d at 826).[2]

Similarly, he relies on *Gilchrist v. General Electric Capital Corp.*, 262 F.3d 295, 301 (4th Cir. 2001), for the proposition that "*in rem* jurisdiction over property in other districts does not give a district court personal jurisdiction over persons in such other districts absent an express congressional grant of personal jurisdiction." But *Gilchrist* is unpersuasive because that case did not consider § 1692 and its express congressional grant of personal jurisdiction.

In sum, §§ 754 and 1692 establish nationwide service of process for Klein's UFTA claims, and Cornelius has not shown his due process rights are violated by having to defend himself in the District of Utah. Accordingly, the district court properly exercised personal jurisdiction over Cornelius.

## B. Fraudulent Transfer

Cornelius makes three arguments contesting the district court's application of the UFTA. He argues that (1) Texas law applies, (2) the transfer was not

---

[2] Cornelius mentions *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. at 106, for the proposition that the CEA's private cause of action, 7 U.S.C. § 25, does not provide nationwide service of process. But as already discussed, Klein brings no cause of action on behalf of Winsome's investors. He brings an action as Winsome's receiver, and §§ 754 and 1692 establish service of process for any district in which receivership property is located.

fraudulent as contemplated by the Act, and (3) in any event, Klein's claim is barred by the four-year statute of limitations.

### 1. *Choice of Law*

Cornelius argues that Texas law, rather than Utah law, applies. Even if it does, the distinction is of no practical significance, as the relevant provisions use identical language. *See* Tex. Bus. & Com. Code Ann. § 24.005; Utah Code Ann. § 25-6-5.

### 2. *The Transfer*

The UFTA provides that a transfer "is fraudulent as to a creditor" under two circumstances: (1) the debtor made the transfer or incurred the obligation "with actual intent to hinder, delay, or defraud any creditor of the debtor;" or (2) the debtor made the transfer or incurred the obligation "without receiving a reasonably equivalent value" and was either engaged in "a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." Tex. Bus. & Com. Code Ann. § 24.005(a); Utah Code Ann. § 25-6-5(1). And because Ponzi schemes are insolvent by definition, we presume that transfers from such entities involve actual intent to defraud. *Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014); *Democratic Senatorial Campaign*

-17-

*Comm.*, 712 F.3d at 196; *Donell*, 533 F.3d at 770; *Wing*, 482 F. App'x at 363; *SEC v. Madison Real Estate Grp.*, 647 F. Supp. 2d 1271, 1279 (D. Utah 2009).

Cornelius denies that Winsome engaged in a Ponzi scheme, but the record permits no other conclusion. Klein's investigation revealed that Andres had solicited investors for Winsome and had led them to believe Winsome's expertise in identifying investment opportunities would yield large profits. But even though none of Winsome's investments made money, it told investors the ventures were profitable and paid them with money gathered from other investors. In addition, Winsome sent much of its money to U.S. Ventures—the entity controlled by Andres's Utah-based co-conspirator—and to Andres and his wife. Winsome sustained this operation for a while by paying third-party marketers to find new investors, but it could not secure other sources of income. It was insolvent throughout, yet continued to pay early investors with funds from later investors and thereby increased its insolvency as time went on. Its payments to Cornelius occurred over a ten-month period in which its insolvency grew dramatically. In summary, Andres was operating a Ponzi scheme through Winsome at the time of the transfer to Cornelius. We therefore presume that he intended to defraud Winsome in making the transfer.

Cornelius offers very little evidence to the contrary, aside from the fact that neither Cornelius nor the criminal defendant he represented knew about the scheme. But nothing in the UFTA requires that a transferee be aware of the

-18-

fraud. *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (applying the UFTA under Texas law); *Plotkin v. Pomona Valley Imports, Inc. (In re Cohen)*, 199 B.R. 709, 716–17 (B.A.P. 9th Cir. 1996).

For claims alleging actual intent to defraud, the UFTA does allow a defense to entities that provide "reasonably equivalent value" for the payments or to subsequent transferees after the initial transfer. Tex. Bus. & Com. Code Ann. § 24.009(a); Utah Code Ann. § 25-6-9(1). Cornelius, however, is not a subsequent transferee, and his legal services in New Hampshire did not confer any benefit upon Winsome. "The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved." *Res. Dev. Int'l,* 487 F.3d at 301 (quoting *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006)) (internal quotation marks omitted). The transfer only served to diminish Winsome's net worth, which was already negative. Moreover, there is no other cognizable benefit that Winsome could have received. It existed for the purpose of generating profits for its investors, and defending Andres's friend in a criminal matter had nothing to do with that purpose. Thus, Winsome did not receive reasonably equivalent value in exchange for the payment. *Id.* at 301–302 ("A payment made *solely* for the benefit of a third party, such as a payment to satisfy a third party's debt, does not furnish reasonably-equivalent value to the debtor." (quoting *Whaley v. Mountainwest Fin. Corp. (In re Whaley)*, 229 B.R. 767, 775 (Bankr. D. Minn. 1999)) (internal quotation marks omitted)); *Hayes v.*

*Palm Seedlings Partners–A (In re Agric. Research & Tech. Grp.)*, 916 F.2d 528, 540 (9th Cir. 1990) ("Any consideration not involving utility for the creditors does not comport with the statutory definition." (citing Unif. Fraudulent Transfer Act § 3 cmt. 2 (1984))).[3]

Cornelius is therefore liable under the UFTA for the payments it received from Winsome.

### 3. *Statute of Limitations*

Finally, we reject Cornelius's claim that the UFTA's statute of limitations expired before Klein filed suit.

Under the UFTA, a claim alleging actual intent to defraud must be brought "within four years after the transfer was made or the obligation was incurred or, if later, *within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.*" Tex. Bus. Com. Code Ann. § 24.010(a)(1) (emphasis added); Utah Code Ann. § 25-6-10(1) (emphasis added). Whether a plaintiff "knew or with reasonable diligence should have known of a cause of action is a question of fact for the jury." *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985). But a court may grant summary judgment where "the evidence is so clear that there is no genuine factual issue that the

---

[3] We reached the same conclusion in a related case involving Klein, Winsome, and virtually identical facts. *See Klein v. King & King & Jones*, 571 F. App'x 702 (10th Cir. 2014).

determinations can be made as a matter of law." *Id*. at 1388 (internal quotation marks omitted).

The fraudulent transfers occurred between September 2006 and July 2007, and Klein filed suit in December 2011. But Klein was not appointed receiver until January 2011, and he argues he could not have known of the fraudulent transfer before he was appointed and could finish an investigation. Cornelius responds that once it became publicly known Winsome was part of a Ponzi scheme, the statute of limitations began running against any potential claimant. We disagree.

First, Cornelius concedes the statute of limitations is tolled under the UFTA for as long as the entity is controlled or dominated by the wrongdoers. *See Dockstader*, 482 F. App'x at 364–65; *see also FDIC v. Appling*, 992 F.2d 1109, 1115 (10th Cir. 1993) ("Control of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to initiate any action contrary to their own interests." (quoting *FSLIC v. Williams*, 599 F. Supp. 1184, 1194 (D. Md. 1984)) (internal quotation marks omitted)); *Democratic Senatorial Campaign Comm.*, 712 F.3d at 190 ("[T]he knowledge and effects of the fraud of the principal of a Ponzi scheme in making fraudulent conveyances of the funds of the [entities] under his evil coercion are not imputed to his captive [entities].").

Thus, the very earliest that the statute could have begun to run was the point at which Andres lost control of Winsome and Klein gained it. Klein filed the complaint in December 2011, within one year of his discovery of a potential UFTA claim. We therefore agree with the district court that there is no genuine issue of material fact as to the statute of limitations defense.

## III. Conclusion

For the forgoing reasons, we AFFIRM the district court's grant of summary judgment to Klein.