# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-3057

LAKE SHORE ASSET MANAGEMENT LIMITED,

*Petitioner,*

*v.*

COMMODITY FUTURES TRADING COMMISSION,

*Respondent.*

Petition for Review of an Order of the
Commodity Futures Trading Commission.

No. 07-3070

COMMODITY FUTURES TRADING COMMISSION,

*Plaintiff-Appellee,*

*v.*

LAKE SHORE ASSET MANAGEMENT LIMITED,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 3598—**Blanche M. Manning**, *Judge.*

ARGUED OCTOBER 23, 2007—DECIDED DECEMBER 28, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Commodity Futures Trading Commission believes that Lake Shore Asset Management, a commodity-pool operator and adviser in the derivatives business, has failed to produce the records required by 7 U.S.C. §6n(3)(A) and the corresponding regulations, 17 C.F.R. §§ 1.31, 4.23, and 4.33. The district judge entered an *ex parte* order of indefinite duration not only requiring Lake Shore to produce the records that the CFTC sought but also freezing all of its assets (including customers' funds). We reversed, 496 F.3d 769 (2007), holding that Lake Shore is entitled to a hearing before any relief may extend past 20 days, and that an asset freeze is appropriate only if customers otherwise are at a demonstrable risk of injury. Lake Shore, although located in the United States, specializes in giving advice to affiliates and customers elsewhere. Our opinion concluded: "The principal dispute in this case appears to concern the extent to which transactions by or on behalf of foreign investors, carried out on exchanges in London, must be disclosed to the CFTC; there is no apparent reason why all of these businesses must be shut down while that dispute is resolved." 496 F.3d at 773.

After our opinion issued, the district court suggested that its *ex parte* order remained in effect, and the CFTC contended that it would be entitled to bring a series of motions, each of which would support a new 20-day asset freeze without need for a hearing. This led to a petition for a writ of mandamus, and on August 8, 2007, we issued this order:

> On August 2, 2007, this court issued an opinion vacating the *ex parte* injunction that the district court had issued. We issued the mandate the same day, so that our decision took effect immediately.

According to the "Motion to Enforce Mandate" that Lake Shore Asset Management filed on August 7, however, the CFTC and the district judge believe that the injunction remains in effect. It does not. To clarify matters, we add the following to our opinion. If necessary, we will enforce these rulings by issuing a writ of mandamus, though we trust that it will not be necessary.

> 1. No injunction is currently in force in this litigation, and none has been in force since August 2, 2007.

> 2. No further *ex parte* order, or other temporary restraining order, may be issued in this case, because the 20-day limit set by Fed. R. Civ. P. 65(b) has been exhausted.

> 3. If the CFTC believes that a preliminary injunction is warranted, it may move for such relief. The district court may not issue such an injunction until after an opportunity for an evidentiary hearing has been afforded to Lake Shore Asset Management.

> 4. A preliminary injunction may include limitations on how Lake Shore Asset Management and its customers hold or dispose of assets only if the CFTC establishes, by a preponderance of the evidence at a hearing, that customers' assets otherwise would be in jeopardy.

The district court then held a hearing and concluded that Lake Shore must turn over the records that the Commission wants to see. The court also issued a new injunction imposing an asset freeze, finding that customers' funds are in jeopardy. The principal support for this

finding is that Lake Shore has told potential customers that it manages more than $1 billion, and that customers' accounts have earned more than 20% annually, but that no more than $230 million can be located at depositary institutions and clearing corporations, which hold most of customers' money in derivatives transactions. This means, the district court concluded, that customers have been losing money (exposing Lake Shore's statements as false or deceptive), that someone has made off with customers' money, or both. 2007 U.S. Dist. LEXIS 65559 (N.D. Ill. Aug. 28, 2007). There are two other possibilities that the district court did not consider: first, Lake Shore may have been exaggerating the amount originally invested; second, the billion-dollar reference may have been to the notional amount of the derivatives rather than to the money customers had placed under Lake Shore's management. The notional amount in a futures transaction is the face value of the contract (say, 100 times the level of the Standard & Poor's 500 Index) rather than the amount of customers' equity. In derivatives transactions, customers rarely hand over more than the margin, which runs between 2% and 20% of the contract's notional value. A court can't distinguish among these possibilities, however, without access to Lake Shore's records.

Lake Shore asked for a stay of the new injunction; we denied that motion without opinion. Meanwhile the National Futures Association concluded that Lake Shore was out of compliance with its rules. The NFA directed Lake Shore to freeze all assets belonging to customers. *In re Lake Shore Asset Management Ltd.*, No. 07-MRA-007 (Aug. 6, 2007). Lake Shore asked the CFTC to stay this directive's enforcement until the agency rules on its petition for review; Lake Shore argued that the NFA lacks the legal authority to enter the kind of order that it did. The CFTC denied the application for a stay. *Lake Shore Asset Management Ltd. v. National Futures Association,*

No. CRRA 07-02, 2007 CFTC LEXIS 64 (Aug. 30, 2007). Lake Shore's petition for review of the NFA's order remains on the CFTC's docket.

We consolidated an appeal from the district court's injunction (No. 07-3070) with Lake Shore's petition for review of the CFTC's order (No. 07-3057). While the parties were preparing their briefs, the litigation continued in the district court. Lake Shore refused to provide the records, and the district court then appointed a receiver in order to ensure compliance. 2007 U.S. Dist. LEXIS 74615 (N.D. Ill. Oct. 4, 2007). Another appeal (No. 07-3408) has been filed from that order. Lake Shore asked for a stay, and on October 15, 2007, we issued this decision:

> The district court entered an injunction that froze the assets of Lake Shore Asset Management and affiliated firms and directed them to make books and records available to the CFTC. We declined to stay that injunction pending appeal, but Lake Shore Asset Management nonetheless failed to comply. The district court found that books and records have not been made available; indeed, Lake Shore refuses to tell the court where they are. The status of customers' assets likewise is unclear, as the court and the CFTC need access to the books to determine whether customers' accounts are in jeopardy. What is more, Lake Shore has filed actions in other nations collaterally attacking the district court's judgment and asking those nations' judges to give Lake Shore permission to disobey the injunction.
>
> The district judge concluded that this contumacious behavior is intolerable and appointed a receiver to take over Lake Shore's operations and bring it into compliance with the injunction.

Injunctions must be obeyed; there is no other alternative. Lake Shore is in contempt of court, and no district judge is obliged to look the other way.

Fed. R. Civ. P. 65(d) provides that an injunction binds "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." This includes Lake Shore's offshore affiliates. If, as Lake Shore maintains, laws of other nations set limits on its disclosures of books and records, that would have been a reason to write a different injunction (or an argument in support of a stay); it is *not* a reason to disobey an injunction actually issued, once this court denied the motion for a stay. Moreover, because the injunction is binding *in personam* on foreign affiliates under common management, the initiation of litigation in other nations' courts in an effort to evade compliance with the injunction is itself a form of contempt, and the district judge is entitled to halt the defiance by empowering the receiver to withdraw all litigation initiated by Lake Shore and its affiliates in other judicial systems.

The district court's order could be read to limit Lake Shore's ability to pursue this appeal (and the others already on file, and scheduled for oral argument on October 23). The CFTC agrees with Lake Shore that a district court cannot prevent appeals of its own orders. We therefore treat the order as not interfering with Lake Shore's efforts, through current management, to obtain appellate review. So understood, the district court's order

is unlikely to be reversed on appeal, and a stay is unwarranted. The motion for a stay is denied.

The district court has since found Lake Shore in contempt of both the preliminary injunction and the receivership order. 2007 U.S. Dist. LEXIS 90963 (N.D. Ill. Dec. 10, 2007). We assume that yet another appeal is in the offing.

Our decision of October 15 says pretty much everything needed to explain why the injunction entered against Lake Shore must remain in effect. The company's briefs in No. 07-3070 scarcely engage the language of 7 U.S.C. §6n(3)(A) and 17 C.F.R. §§ 1.31, 4.23, and 4.33, on which the order principally rests. Instead Lake Shore devotes most of its energies to denying that the CFTC may regulate acts that occur outside the borders of the United States. That's true enough—authority for extraterritorial regulation must be express, see *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), while 7 U.S.C. §6n does not mention activities that domestic firms conduct in other nations—but beside the point.

Lake Shore transacts its business in the United States. It voluntarily registered with the CFTC and joined the NFA. It assures customers that it is subject to U.S. law, doubtless thinking that submitting to regulation in this nation would make its promises credible. Some of the trades occur on exchanges in the United States; some customers' assets are held here. Federal law controls how Lake Shore must conduct itself within the United States, even though other companies in the same affiliated group do *their* business outside, and even though most of the group's business is with investors from other nations. Having registered with domestic agencies—and having assured the NFA as a condition of membership that no foreign secrecy law prevents compliance with this nation's disclosure requirements—Lake Shore must abide by federal law, including the record-keeping-and-disclosure rules.

Lake Shore maintains that the freeze is invalid, even if the disclosure order is proper, because the CFTC has failed to prove that any of its customers relied on a misrepresentation. But the CFTC need not show reliance by private investors in order to obtain relief. See *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000). Reliance is an element in a private action for damages; proof of reliance is not required in a regulatory agency's suit—or for that matter a criminal prosecution. See *United States v. Rosby*, 454 F.3d 670 (7th Cir. 2006).

As for the CFTC's denial of interlocutory relief from the NFA's order: That's not even within our subject-matter jurisdiction. Courts review final decisions, and an agency's resolution of one legal issue—such as whether the NFA has the authority to freeze a member's assets—is not a "final decision" while other aspects of the proceeding are ongoing before the agency. See, e.g., *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980). We have not been able to find any opinion discussing how the finality rule applies to the relation among the NFA, the CFTC, and the courts of appeals. But substitute a self-regulatory organization in the securities business for the NFA, and the SEC for the CFTC, and the answer is known.

*Allan v. SEC*, 577 F.2d 388, 392–93 (7th Cir. 1978), holds that the SEC's decision not to stay disciplinary sanctions imposed by a self-regulatory organization is not final and thus is not reviewable until the agency has resolved the matter fully. The jurisdictional statute at issue in that case, 15 U.S.C. §78y(a)(1), is almost identical to the statute at issue here, 7 U.S.C. §21(i)(4). Cf. *Cheng Fan Kwok v. INS*, 392 U.S. 206 (1968) (denial of a stay of deportation is not a final order of deportation and therefore is not reviewable). What's more, the CFTC has yet to decide whether the NFA enjoys the authority it claims. A litigant can't use a motion for a stay (followed

by a petition for judicial review) to force an agency to make an instant decision on a complex issue. The CFTC may address the subject after full deliberation, and judicial review must await the agency's final disposition of the entire dispute presented by Lake Shore's petition to review the NFA's order.

Having said all this, however, we must confess that in one important respect our decision of October 15 was imprecise. We observed that under Fed. R. Civ. P. 65(d) an injunction against Lake Shore Asset Management, Ltd., binds all those acting in concert with it—which means other members of the corporate group. But it does not follow that a litigant's affiliates may be named in an injunction. The only defendant in the CFTC's suit is Lake Shore Asset Management, which must be the sole addressee of the injunction. See *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110–11 (1969). The injunction may direct Lake Shore to do things within its power—such as turning over *its* books and records—but may not impose obligations directly on other members of the corporate group.

Any of Lake Shore's affiliates is bound, to be sure, by an injunction against Lake Shore, but a district court must not direct Lake Shore to do things that only some other member of the group, not named as a defendant, could perform. And *whether* a particular person or firm is among the "parties' officers, agents, servants, employees, and attorneys; [or] other persons in active concert or participation with" them (see Fed. R. Civ. P. 65(d)(2)(B), (C)) is a decision that may be made only after the person in question is given notice and an opportunity to be heard. (This language comes from the version of Rule 65 that became effective on December 1, 2007; the language quoted in our order of October 15 is from the version of Rule 65(d) that was then current. There is no substantive difference.)

The district judge evidently was confident that other members of the Lake Shore Group of Companies are "in active concert or participation with" Lake Shore Asset Management, and that may well be true. But so far none of these other entities has been served with process and given an opportunity to present evidence. That is essential before any enforcement action may be taken against a non-litigant. *Zenith Radio* held that even a defendant's concession that some additional entity is the defendant's alter ego does not warrant an injunction against that entity, until it has been served with process and offered the opportunity to say whether it agrees with the original defendant's concession. See also, e.g., *Chase National Bank v. Norwalk*, 291 U.S. 431, 436–37 (1934); *Scott v. Donald*, 165 U.S. 107, 117 (1897).

The injunction that the district court entered imposes obligations on "Lake Shore [Asset Management] Limited, individually and as part of the Lake Shore common enterprise". The phrase "individually and as part of the Lake Shore common enterprise" must be deleted wherever it occurs in the injunction, so that the order's only addressee is Lake Shore Asset Management, the sole defendant. Rule 65(d)(2) specifies who other than Lake Shore must comply, and before any person or entity is deemed to be "in active concert or participation with" Lake Shore, notice and an opportunity for a hearing must be provided. Of course, other members of the Lake Shore Group of Companies act at their peril if they disregard the commands of the injunction, for, if the district court ultimately determines that they are in concert with Lake Shore, then they will be in contempt of court. But that is an issue for another day, if any additional member of the group (or any of the entities' officers) should be named as a party. See *In re Teknek, LLC*, No. 07-1498 (7th Cir. Dec. 28, 2007).

The petition to review the CFTC's order is dismissed for want of jurisdiction. The judgment of the district court is affirmed to the extent it concerns Lake Shore Asset Management (and is within its power to perform) but is vacated to the extent the injunction imposes duties on other entities, and the case is remanded for proceedings consistent with this opinion.

A true Copy:

       Teste:

                            _____

                           *Clerk of the United States Court of Appeals for the Seventh Circuit*