**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2129**

RECEIVER FOR REX VENTURE GROUP, LLC,

Defendant - Appellant,

v.

BANCA COMERCIALA VICTORIABANK SA,

Appellee,

and

SECURITIES & EXCHANGE COMMISSION

Plaintiff,

v.

REX VENTURE GROUP, LLC, d/b/a Zeekrewards.com; PAUL R. BURKS; TRUDY GILMOND; KELLIE KING; BBVA COMPASS

Defendants,

and

NXSYSTEMS, INC.,

Respondent,

and

DAWN WRIGHT-OLIVARES; DANIEL OLIVARES; ALEXANDRE DE BRANTES

Intervenors.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, Senior District Judge. (3:12-cv-00519-GCM)

Argued: October 16, 2020                                    Decided: January 29, 2021

Before GREGORY, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Mark W. Kinghorn, MCGUIREWOODS, LLP, Charlotte, North Carolina, for Appellant. Kiran H. Mehta, TROUTMAN SANDERS LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Joshua D. Davey, Matthew E. Orso, Jacob R. Franchek, MCGUIREWOODS, LLP, Charlotte, North Carolina, for Appellant. Lindsey B. Mann, Kathleen Campbell, TROUTMAN SANDERS LLP, Atlanta, Georgia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This contempt proceeding comes to us on appeal for the second time. Matthew E. Orso, the appointed receiver (the "Receiver") for Rex Venture Group, LLC (RVG) d/b/a ZeekRewards.com, appeals the district court's determination that it lacked personal jurisdiction over Banca Comerciala Victoriabank SA (Victoriabank). Victoriabank is a commercial bank with its headquarters and principal place of business in the Republic of Moldova. For the following reasons, we affirm.

I.

A.

This case arises out of the Receiver's efforts to return funds to the victims of ZeekRewards, a combined Ponzi and pyramid scheme. RVG operated ZeekRewards, ultimately obtaining over $800 million from more than 800,000 individuals. ZeekRewards accomplished this scheme by advertising for a "penny auction" website wherein victims transferred money through various digital wallet companies.

Relevant here, Payza was one such digital wallet company. To service the digital money transfers, Payza used a long chain of payment-processing entities (each named variations of "PaymentWorld") and their sponsoring banks. Within this chain, Victoriabank acted as Payza's acquiring bank. As the acquiring bank and a member of a credit-card association, Victoriabank enabled Payza to accept credit-card payments. Thus a payment to ZeekRewards involved the following: victims submitted their payment information to Payza; California-based PaymentWorld, LLC (PW-USA) transmitted the

3

payment information to Victoriabank; Victoriabank acquired the funds from the credit-card company and deposited them into an account owned by Moldova-based ICS Payment World SRL (PW-Moldova); Hong Kong–based PaymentWorld Limited (PW-HK) transferred those funds from the PW-Moldova account at Victoriabank to Tusar Bank; Tusar Bank ensured that the correct amount of money was exchanged between Victoriabank and the issuing bank (i.e., the bank that issued the credit card to the consumer); PW-HK transferred the funds from Tusar Bank to Payza; and then Payza transferred those funds to RVG. The PW-Moldova account at Victoriabank retained a percentage of each Payza transaction in reserve to cover chargebacks, reversals, or other potential risks.

On August 17, 2012, the U.S. Securities and Exchange Commission (SEC) instituted a civil enforcement action against RVG and its principal, Paul Burks, in the Western District of North Carolina. That same day, the district court appointed a Receiver to assist with returning funds to the scheme's victims and issued an order freezing RVG's assets (the "2012 Freeze Order"). The 2012 Freeze Order obligated all persons and financial institutions in possession of RVG assets to freeze the funds or otherwise make them available to the Receiver. At that time, the PW-Moldova account at Victoriabank allegedly held $13,174,015.48 in receivership assets.

Roman Balanko, the owner and CEO of PW-USA, called and emailed Victoriabank to inform it of the 2012 Freeze Order shortly after it was entered. The Receiver also sent a written letter—dated September 11, 2012, and received September 17, 2012—to Victoriabank at its headquarters in Moldova. The letter included a copy of the 2012 Freeze

4

Order, informed Victoriabank that the PW-Moldova account contained receivership assets subject to the 2012 Freeze Order, and requested assistance in seizing those assets. Both the letter and the 2012 Freeze Order were written in English, not Moldova's official language of Romanian. The Receiver never properly served Victoriabank with the 2012 Freeze Order pursuant to either Moldovan law or the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, commonly known as the Hague Service Convention.

Victoriabank informed the Receiver that it would not comply with the 2012 Freeze Order because doing so would violate Moldovan law. Moldovan law distinguishes between foreign "precautionary measures" and final, binding foreign judgments. J.A. 1057. Foreign precautionary measures must be domesticated in Moldova—i.e., given effect through Moldovan courts—before they are enforceable within the country. Certain final foreign judgments need not be domesticated to be enforceable. The Receiver never domesticated the 2012 Freeze Order.

On September 25, 2012, PW-Moldova transferred $15.5 million from its account at Victoriabank to a PW-HK account at Tusar Bank in Russia. Victoriabank facilitated this transfer by routing the funds through its correspondent account at Bank of New York Mellon (BNYM), located in New York City. "A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds." *SEC v. Receiver for Rex Ventures Grp., LLC*, 730 F. App'x 133, 135 (4th Cir. 2018) (per curiam) (quoting *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 165 n.3 (2d Cir. 2013)); *see also* 31 U.S.C. § 5318A(e)(1)(B) ("The

term 'correspondent account' means an account established to receive deposits from [and] make payments on behalf of a foreign financial institution, or handle other financial transactions related to such institution."). Three days after this transfer to Tusar Bank, PW-HK routed the funds to an account for PaymentWorld Limited Russian Federation at Master Bank in Russia. Master Bank closed soon thereafter, and those funds appear to be beyond recovery. The Receiver made several attempts to obtain the funds voluntarily from Victoriabank and PW-Moldova, to no avail.

## B.

Based on Victoriabank's facilitation of the transfer, the Receiver moved to hold Victoriabank in contempt of the 2012 Freeze Order. On February 12, 2016, pending resolution of the merits of the contempt motion, the district court issued a second freeze order (the "2016 Freeze Order") on $13,174,015 of unrelated assets in Victoriabank's BNYM correspondent account as a substitute for the assets transferred from PW-Moldova's Victoriabank account.

Victoriabank moved to dismiss the Receiver's contempt motion and dissolve the 2016 Freeze Order for lack of personal jurisdiction. The Receiver asserted that the district court had personal jurisdiction over Victoriabank based on two independent theories: (1) Victoriabank's violation of the 2012 Freeze Order (the "freeze-order theory") and (2) Victoriabank's use of its BNYM correspondent account in New York to transfer receivership assets (the "correspondent-account theory"). The district court denied full

6

jurisdictional discovery but allowed the Receiver to depose Balanko and issue third-party subpoenas to BNYM to obtain certain documents.

Following a hearing, the district court granted Victoriabank's motion to dismiss. The district court explained that because the Receiver had conducted some (albeit not full) jurisdictional discovery, the Receiver had to prove personal jurisdiction by a preponderance of the evidence. The district court concluded that the Receiver failed to establish personal jurisdiction under either of the Receiver's theories. First, Victoriabank had not violated the 2012 Freeze Order because the Receiver never domesticated that order in Moldova. Second, Victoriabank's use of its BNYM correspondent bank account in New York was not sufficient contact with North Carolina to give rise to personal jurisdiction.

The Receiver appealed. We reversed and remanded, holding that the district court had applied an incorrect standard of proof given the limited jurisdictional discovery it allowed. We ordered the district court to either (1) "review the parties' initial filings and apply the lower [prima facie] standard of proof" or (2) "permit additional discovery to create a fuller evidentiary record before requiring the Receiver to prove jurisdiction by a preponderance of the evidence." *Receiver for Rex Ventures Grp.*, 730 F. App'x at 137. We further ordered that "[s]hould the court employ the lower standard, it 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

On remand, the district court granted Victoriabank's renewed motion to dismiss. The district court determined that it had no power under the Federal Rules of Civil

Procedure to order jurisdictional discovery as to Victoriabank, because Victoriabank was a nonparty over which there was no preliminary finding of jurisdiction. The district court also noted that even if it did have the authority to order additional jurisdictional discovery as to Victoriabank, it could not hold Victoriabank in contempt for noncompliance with a U.S. court order that had never been domesticated in Moldova. As such, the district court chose to review the initial filings rather than allow additional discovery. The district court ultimately concluded that the Receiver could not demonstrate personal jurisdiction even under the lower prima facie standard of proof and granted the motion to dismiss. The district court allowed the 2016 Freeze Order to remain in effect pending appeal.

The Receiver timely appealed. On appeal, the Receiver argues that the district court erred both in finding that he did not make a prima facie showing of personal jurisdiction and in denying additional discovery as to Victoriabank. We requested supplemental briefing on whether the district court has personal jurisdiction over Victoriabank under Federal Rule of Civil Procedure 4(k)(2). Specifically, we asked (1) whether Victoriabank is subject to personal jurisdiction in any state and (2) whether Victoriabank's contacts with the United States as a whole are sufficient to establish jurisdiction consistent with the Due Process Clause.

## II.

We review the district court's determination that it lacks personal jurisdiction over Victoriabank de novo. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The Receiver's appeal presents two questions: (1) whether

the Receiver made a prima facie showing of personal jurisdiction over Victoriabank based on the parties' initial filings and (2) whether the district court erred in denying additional jurisdictional discovery. We consider each in turn.

A.

We first determine whether the Receiver has made a prima facie showing of personal jurisdiction over Victoriabank based on the parties' initial filings. "A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citing *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012)).

"Under the Fourteenth Amendment's Due Process Clause, there are two paths permitting a court to assert personal jurisdiction over a nonresident defendant." *Id.* at 559. The first path, specific jurisdiction, "may be established if the defendant's qualifying contacts with the forum state also constitute the basis for the suit." *Id.* (citing *Tire Eng'g v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012)). The second path, general jurisdiction, "requires a 'more demanding showing of continuous and systematic activities in the forum state.'" *Id.* (quoting *Tire Eng'g*, 682 F.3d at 301). Here, the Receiver presents two theories of specific jurisdiction: the correspondent-account theory and the freeze-order theory. We also consider whether specific jurisdiction exists pursuant

9

to Rule 4(k)(2).

1.

The Receiver argues that the district court has personal jurisdictional over Victoriabank because Victoriabank used its BNYM correspondent account in New York to place the proceeds of the scheme out of the Receiver's reach. The Receiver cites cases applying New York's long-arm statute, which allows a court to "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1) (McKinney 2008).

Even assuming that Victoriabank is subject to jurisdiction under New York's long-arm statute, the Receiver makes no effort to establish how that jurisdiction extends to North Carolina. This failure is fatal to the Receiver's argument. The Western District of North Carolina cannot exercise jurisdiction pursuant to New York's long-arm statute. *See Universal Leather*, 773 F.3d at 558 (noting that personal jurisdiction must be statutorily "authorized by the long-arm statute of the state in which the district court sits"). Based on the parties' initial filings, the Receiver has failed to show how Victoriabank's use of its BNYM correspondent account gives rise to jurisdiction in North Carolina.[1]

---

[1] In theory, Victoriabank's use of its correspondent account to transfer receivership assets gave rise to an alternative basis for jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(1). Under Rule 4(k)(1), the service of a summons may establish personal jurisdiction "when authorized by a statute of the United States." Fed. R. Civ. P. 4(k)(1)(C). Several courts of appeals have held that the statutory authorization can be found in 28

10

2.

The Receiver alternatively argues that the district court has personal jurisdiction over Victoriabank based on its alleged knowing violation of the 2012 Freeze Order. The Receiver relies on a line of cases, beginning with *Waffenschmidt v. MacKay*, holding that district courts have inherent, nationwide authority to institute civil contempt proceedings against nonparties who knowingly aid and abet violations of injunctions. *See* 763 F.2d 711, 714, 718 (5th Cir. 1985); *see also ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1214–15 (10th Cir. 2011) (allowing district court to exercise specific jurisdiction over domestic nonparties for contempt proceedings); *SEC v. Homa*, 514 F.3d 661, 673–75 (7th Cir. 2008) (allowing district court to exercise specific jurisdiction over American nonparties who resided abroad for contempt proceedings).

The district court declined to extend the reasoning of *Waffenschmidt* to the instant facts, citing *Reebok International Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995). In *Reebok*, the Ninth Circuit held that a district court lacked jurisdiction over a foreign nonparty bank's violation of a U.S. freeze order in Luxembourg when the freeze order had never been domesticated in Luxembourg and Luxembourg law separately required the bank

U.S.C. §§ 754 and 1692, which together allow a district court to exercise jurisdiction over a nonresident holder of receivership assets regardless of whether the holder had any contacts with the forum state. *See, e.g.*, *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015); *SEC v. Ross*, 504 F.3d 1130, 1145 (9th Cir. 2007); *SEC v. Bilzerian*, 378 F.3d 1100, 1103 (D.C. Cir. 2004); *Am. Freedom Train Found. v. Spurney*, 747 F.2d 1069, 1073 (1st Cir. 1984). The Receiver, however, does not meet the requirements of Rule 4(k)(1) or §§ 754 and 1692. At the outset, the Receiver admits that he "has not served a summons on Victoriabank, nor has Victoriabank waived service," as required under Rule 4(k)(1). Receiver's Supp. Br. at 1. Nor does the Receiver contest that he failed to meet the filing requirements of §§ 754 and 1692.

11

to act contrary to that order. *See id.* at 1392–94 ("[W]hen a national of a foreign country follows the law of that country in that country it can[not] be dragged halfway around the world to answer contempt charges arising out of a foreign court's ineffective order."). Similarly, the district court concluded that Moldovan law required the Receiver to domesticate the 2012 Freeze Order in Moldova before it was enforceable within that country. Because the Receiver never did so, the district court determined that it was never enforceable against Victoriabank.[2]

Intervening case law has simplified this inquiry. Recently, in *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, we held that *Waffenschmidt* does not necessarily extend to foreign nonparties. *See* 935 F.3d 211, 229 (4th Cir. 2019); *cf. Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (noting that no court of appeals has extended the *Waffenschmidt* theory to foreign nonparties). Rather, "[a]lleged foreign nonparty contemnors must . . . have minimum contacts with the forum" before a district court can exercise personal jurisdiction over them. *Hawkins*, 935 F.3d at 229.[3]

---

[2] The Ninth Circuit's conclusion in *Reebok* relied in part on Luxembourg banking law that required the bank to act contrary to the U.S. freeze order. *See* 49 F.3d at 1392–94. Notably, experts in the instant case provided competing testimony on Victoriabank's separate obligations under Moldovan banking and money laundering law. The district court, however, found no jurisdiction existed over Victoriabank based solely on the domestication issue. Regardless, we need not wade into that morass.

[3] We acknowledged in *Hawkins* that "[i]f the [*Waffenschmidt*] theory is correct and courts may exercise jurisdiction over nonparty aiders-and-abettors nationwide, then we should arguably adopt a 'national contacts' analysis, looking to foreign nonparties' contacts with the entire United States, not just the forum state." 935 at 229–30 (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626–27 (4th Cir. 1997)). But as in *Hawkins*, we need not decide this issue today.

Yet any minimum contacts analysis of Victoriabank is dead in the water. "When an aider-and-abettor was not a party to the underlying proceedings that led to the injunction, it must nonetheless be made a party to the contempt proceedings." *Id.* (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 112 (1969)); *Lake Shore Asset Mgmt. Ltd. v. CFTC*, 511 F.3d 762, 767 (7th Cir. 2007)). "And that necessarily requires valid service of process comporting with the Constitution." *Id.* The Receiver concedes that he never properly served Victoriabank in the instant contempt proceeding. Accordingly, the Receiver's freeze-order theory of jurisdiction fails.

3.

We requested supplemental briefing on whether jurisdiction exists pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides a mechanism for exercising jurisdiction over a foreign defendant that lacks sufficient contacts with any individual state but has sufficient contacts with the United States as a whole to satisfy due process. *See Grayson v. Anderson*, 816 F.3d 262, 271 (4th Cir. 2016). Jurisdiction under Rule 4(k)(2) has three prerequisites: (1) the defendant must be served or file a waiver of service, (2) the defendant must not be subject to jurisdiction in any state, and (3) exercising jurisdiction must be consistent with due process. Fed. R. Civ. P. 4(k)(2).

The Receiver concedes that "Rule 4(k)(2) . . . does not apply" because "[t]he Receiver has not served a summons on Victoriabank, nor has Victoriabank waived service." Supp. Br. of Appellant at 1. We agree. Accordingly, jurisdiction does not exist under Rule 4(k)(2).

13

B.

We next consider whether the district court erred in choosing to review the initial filings under a prima facie standard instead of permitting additional jurisdictional discovery. We tasked the district court with choosing between the two options, and the district court exercised its discretion in so choosing. *See Carefirst of Md., Inc.*, 334 F.3d at 402–03 (noting that "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]'" (alterations in original) (quoting *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993))). We agree with the district court that further jurisdictional discovery would be fruitless given its inability to hold Victoriabank in contempt. A nonparty aider-and-abettor must be made party to the suit through proper service of process in order to be held in contempt for violating an injunction. *See Hawkins*, 935 F.3d at 229. As discussed, the Receiver never properly served Victoriabank. Accordingly, the district court was within its discretion to deny additional jurisdictional discovery.

III.

We appreciate that today's ruling hamstrings the Receiver's efforts to recompensate the ZeekRewards victims. But we cannot flout due process in the name of recompense. For the foregoing reasons, the district court's judgment is

*AFFIRMED*.